## Black *et al. versus* Tricker.

1. Under the 2d section of Act of May 5th 1855, it is not necessary that there should be a *decree* that a wife is to be regarded as a *feme sole* trader, to enable her to hold property under the circumstances mentioned in the act.

2. The creditors of the husband cannot come upon what the wife acquires under the circumstances mentioned in the act.

3. The existence of the circumstances mentioned in the Act of February 22d 1718 (Feme Sole Traders), having been established in any controversy in the ordinary way by proofs, the privilege to her results: the 2d section of the Act of 1855 is *in pari materiâ* with that act.

4. The 2d section of the Act of 1855 was designed to suspend the marital rights of the husband in consequence of the acts enumerated, and to relieve the wife from her marital obligations: and the establishment of those acts is all that is required of her.

5. The Act of May 5th 1855 is remedial, and is to be interpreted benignly.

6. Other sections of the Act of 1855, and the 3d section of the Act of April 11th 1856, construed.

May 13th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Bedford county*: No. 57, to May Term 1868.

This was an action of ejectment to February Term 1867, by John Black and others against Catharine Tricker, for a tavern house and two lots of land, in Liberty township. The premises in dispute had been the property of George Tricker, the husband of the defendant; they had been sold under judgments against him, and on the 19th of November 1857 were conveyed by the sheriff to Francis Jordan, Esq. On the 8th of February George Roads, by articles of agreement, purchased the property from Mr.

Jordan for $713.90, and on the same day Roads and Mrs. Tricker entered into an agreement which recited the sale by Jordan and by which Roads obligated himself to hold the property in trust for her, and to convey it to her whenever she should have paid to him what he had paid or should pay on the purchase, with interest.  On the 17th of November 1860 Mr. Jordan by deed endorsed on the sheriff's deed conveyed to Roads.  Mrs. Tricker paid Roads the consideration in several payments, the receipts for which were endorsed on her articles with Roads.  The whole amounted to $868.55: the last payment was made July 10th 1862, on which day a deed was made to her for the property by Roads.  On the 30th of May 1864 the plaintiffs in the ejectment, trading as J. Black & Co., recovered a judgment against George Tricker for $543.17, under which George Tricker's interest in the premises was sold by the sheriff to the plaintiffs, and conveyed to them, February 7th 1867.  Mrs. Tricker being in possession of the premises, this ejectment was brought for their recovery.

The plaintiffs gave in evidence the sale and sheriff's deed to them; they also gave evidence of the death of George Tricker and rested.

The defendant gave in evidence her title as above stated.  She then offered to prove " that George Tricker repeatedly and for a long period of time ill treated and abused her and their family, that he neglected and refused to provide for or support them, that he was constantly addicted to habits of intemperance, profligacy and drunkenness, causing him to be a burden to his wife, and throwing him entirely upon her industry and energy for his own support; that he repeatedly deserted his wife and children, and totally abandoned and surrendered his marital rights, and that she, Catharine Tricker, by her own good management, industry and energy, and his improvidence and wastefulness, was obliged to and did provide for and maintain herself and family, and by her acquisitions and savings managed to pay for the property in controversy, without any aid or assistance from her husband."

The offer was objected to by the plaintiffs; admitted by the court, and a bill of exceptions sealed.  She then gave evidence of the character contained in the offer.

The plaintiffs in rebuttal gave evidence that Tricker was in the army for several years during the rebellion; that he sent money, dry goods and groceries home to his wife; that he and his wife lived together; that their bearing to each other was friendly, except when he had been drinking, &c.

The plaintiffs by their 1st point asked the court to charge:

" That there is nothing in the Act of May 4th 1855 to prevent a recovery of the plaintiffs in this case, as the defendant cannot claim to be a *feme sole* trader under said act, the requisite decree never having been made by the court."

[Black *v.* Tricker.]

The defendant in her 5th point asked the court to charge:

"That if the jury believe that George Tricker, from drunkenness, profligacy or other cause, neglected or refused to provide for his wife, or deserted her, she became and was a *feme sole* trader under the provisions of the Acts of 1718 and 1855, from the time they shall find any such acts of delinquency or refusal to provide for his wife occurred, and that being so entitled to the privileges of a *feme sole* trader, if they believe she acquired the property in dispute after such drunkenness, profligacy or refusal to provide for her, that then she owns and holds the same without any liability to be interfered with by her husband or his creditors, and their verdict must be for the defendant."

King, P. J., in his charge said:—

"The 1st point of the plaintiffs' and the 5th point of the defendant refer to the same question, and we will consider and answer them together.

"This, in our judgment, is the main question in the case: Without troubling you with a minute inquiry in reference to the Act of 4th May 1855, we say that its plain meaning is this: that where a husband, by reason of habits of drunkenness, profligacy and other causes, neglects to provide for his wife and family, and the wife by her labor, industry and frugality provides for the family and accumulates property, she is entitled to claim and hold the same as her own, as if she were a *feme sole* trader, against her husband, his creditors and the whole world.

"In this case the property now in dispute had been sold by the sheriff to Mr. Jordan, who conveyed it to Mr. Roads, who, it is apparent, purchased it for Mrs. Tricker, and kept it for her until she paid for it out of the proceeds of her own labor and management, without any aid or assistance from her husband, when he made a deed direct to her. At common law the earnings of the wife belong to the husband, and any property she might acquire by said earnings would also belong to him; but the Act of 1855 changes this rule under certain facts and circumstances, and the question is now submitted to the jury whether this case is within the meaning of this act. It is not necessary, as argued by the plaintiffs, that before the defendant can claim the benefit of this act, she should be declared a *feme sole* trader according to the provisions of the 3d section. We therefore refuse to affirm the 1st point of the plaintiffs, and affirm the 5th point of the defendant."

The verdict was for the defendant. Judgment having been entered upon it, the plaintiffs took a writ of error, and assigned for error the portions of the charge given above, and the admission of the evidence objected to.

*S. L. Russell* (with whom were *W. M. Hall* and *F. M. Kimmell*), for plaintiffs in error.—Statutes are to be interpreted according

[Black *v.* Tricker.]

to the principles of the common law, and when there is ambiguity, the construction should be in favor of public convenience : Black-more *v.* Gregg, 10 Watts 224 ; Sch. Directors *v.* Carlisle Bank, 8 Id. 291 ; Borland *v.* Nichols, 2 Jones 42 ; Stromfeltz *v.* Manor Turnpike, 1 Harris 560. The rights of a married woman from the profligacy, &c., of her husband under the Act of May 4th 1855, § 2, Pamph. L. 430, Purd. 474, pl. 5, should be established by a decree of the court: Hale *v.* Hesser, 3 Phila. R. 508.

*R. B. Petriken* (with whom was *J. Cessna*), for defendant in error.—No decree was necessary: Acts of 1855, § 2, *supra;* also §§ 3–6, Purd. 701, 702, pl. 23–26; Feb. 22d 1718, §§ 1–4, 1 Sm. L. 99, Purd. 474, pl. 1–4 ; April 11th 1856 § 3, Pamph. L. 315, Purd. 702, pl. 29. The statute of 1855 is remedial and is to be construed so as to suppress the mischief: 1 Sharsw. Black. 87, 88, note. The statutes quoted are *in pari materiâ* and are to be construed with reference to each other: Neff's Appeal, 9 Harris 247 ; 1 Black. Com. 60, note 8 ; 1 Bishop's Cr. L. 118 ; 1 Bacon's Abr. *Statutes* 1, 7–9 ; Hyde *v.* Hesser, *supra.* Exception strengthens, and enumeration weakens the force of a law: Story on the Const., § 448 ; Smith on Contracts, § 172 ; State *v.* Sumner, 10 Vermont 587 ; Rex *v.* Gillrass, 7 Car. & P. 444 ; 1 Bishop's Cr. L. § 249 ; Bennett *v.* Ward, 3 Caines C. 259.

The opinion of the court was delivered, May 20th 1868, by

THOMPSON, C. J.—We are of opinion that the learned judge below gave a substantially accurate exposition of the law of the 2d section of the Act of the 4th of May 1855, when he instructed the jury, " that when a husband by reason of habits of drunkenness, profligacy or other cause neglects to provide for his wife and family, and the wife by her labor, industry and frugality provides for the family, and accumulates property, she is entitled to claim and hold the same as her own as if she was a *feme sole* trader against the husband, his creditors and the whole world ;" and in holding that a decree by a court that she is to be regarded as a *feme sole* trader, is not necessary to enable her to hold property acquired by her under the circumstances mentioned in the act.

The section provides that " whensoever any husband, from drunkenness, profligacy or other cause, shall neglect or refuse to provide for his wife, or shall desert her, she shall have all the rights and privileges secured to a *feme sole* trader under the Act of the 22d February 1718 ; and be subject as therein provided, and her property, real and personal, howsoever acquired, shall be subject to her free and absolute disposal during life, or by will, without any liability to be interfered with or obtained by such husband, and in case of intestacy shall go to her next of kin as if he were previously dead.

[Black *v.* Tricker.]

It would seem from these provisions that the acquisitions of the wife, under the contingencies mentioned in the act, being declared by it to belong to her, and subject only to her control, without any right in the husband to interfere with them, his creditors cannot come upon them. But that is attempted here. The jury have found the profligacy, drunkenness, failure and neglect of the husband to provide for his wife in the case, upon the evidence, and under proper instructions submitting it. But it is claimed that the finding was upon insufficient evidence,—that the only proper evidence on this point should be a decree of a court, passing on the question of profligacy, drunkenness and neglect, and certifying the wife as a *feme sole trader*.

We have no adjudicated cases on this point, in its applicability to the 2d section of the act quoted above. The only question therefore is, whether the property bought by, and paid for by the defendant out of the fruits of her earnings, without the aid and assistance of her husband, and in despite of his profligacy and neglect, can be held by her against his creditors, it having been acquired without a decree being first had in her favor that she was a *feme sole* trader. There is certainly nothing in the section which expressly requires it. " She *shall have* all the rights and privileges secured to a feme sole trader by the Act of 22d February 1718," is the language of the act. Married women, by that act, whose husbands have gone to sea, leaving them to work for their livelihood, are to be "deemed, adjudged and taken, and are *hereby declared* to be as *feme sole* traders," and liable as such to sue and be sued, &c. This act creates or rather declares the conditions of the wife as the result of the circumstances, and no decree of a court is required to determine it. The fact being established in any controversy in the ordinary way by proof, the privilege results. This I understand to be what the court meant in Jacobs *v.* Featherstone, 6 W. & S. 346, in saying: "It is her being left to contract debts for which his person cannot be reached by process that gives her the credit, and subjects her to the responsibility of a *feme sole*." No decree is expressly required in this act, and this serves to explain the section under consideration; being on the same subject-matter, they are to be regarded as *in pari materiâ*, and subject to the same construction; and if so no decree was required in this case.

But without this aid it seems to me the proper construction of this act must result in the same way. The section was designed to suspend the marital rights of the husband as a consequence of the acts enumerated, and at the same time to relieve the wife from her marital disabilities. It was intended to put her on a footing, where she could acquire and exercise dominion over property, to sue and defend; and when the act declares that property acquired under the circumstances described, the proof of or

9 P. F. Smith—2

[Black *v.* Tricker.]

establishment of those circumstances is surely all that is required in this, as in the other act. I see not how a creditor could complain of want of notice of the situation of the parties. In the absence of any deceit practised on him he cannot complain. He ought to have inquired before he trusted. Any one who trusts a drunken profligate has himself to blame, for he ought not to be deceived if he exercises any reasonable care and circumspection.

The construction contended for, would require the decree to precede the efforts of the wife to accumulate the means of supporting herself and family, and how she could accomplish this in most instances it would be difficult to tell. The statute simply, therefore, restores her to her natural rights under the circumstances, one of which is to acquire and hold dominion over her acquisitions against all but her own creditors. We think the law is to be carried out in reference to her property as it is in other cases of a feme sole. It is a remedial statute and to be benignly interpreted.

The 3d section of the act substitutes the wife and mother to the authority of the father over the children, in case of the neglect of the father to provide, as in the 2d section. Like the 2d section, no provision exists for any decree of the court in aid of this power; and it is not until we come to the 4th that there is any provision in regard to a decree and certificate to the wife as a *feme sole* trader. But the object of it is there declared. It is that " creditors, purchasers and others may with certainty and safety transact business with the married woman under the circumstances aforesaid." I agree with the able argument of the counsel for the defendant in error, that in view of the provisions of the preceding sections, and the difference in character and subjects embraced by them from those of the 4th, we would not be justified in holding this decree as a necessity in all of them without regard to this difference. It is not needed to enable the married woman to hold property, nor is it necessary in order to enable her to control her children. The act fixes her *status* in regard to them, by substituting her authority in place of the father's voluntarily withdrawn, and we think we ought to regard it as fixed by the same authority as to acquiring and holding property acquired by her. Nor does the section, when it declares that the certificate under the decree shall be conclusive of the right of the married woman to transact business, exclude other modes of competent proof.

The 5th section also throws light on this point, we think. It declares that where a husband shall have for one whole year or upwards, previous to the death of his wife, wilfully neglected or refused to provide for her, or deserted her, he shall not be entitled to claim any right in her real or personal estate as tenant by the curtesy. No decree is declared necessary to have been made in

the lifetime of the wife to effectuate this intention of the act. The facts to establish this, when it is relied on to defeat the claims of a husband, are to be proved and found by a jury in the ordinary way. No other mode is provided.

Again, by the 3d section of the Act of 11th April 1856, it is provided that where a husband has neglected or refused to support his wife, or she has been divorced from bed and board, it shall be lawful for her to maintain actions of slander or libel, for the protection of her reputation, and to recover her separate earnings or property. This act being *in pari materiâ* with the acts already cited, shows very satisfactorily that a decree of *feme sole* trader is not absolutely necessary in order to enable the wife to assert her rights and privileges in regard to her own property acquired under them. This is the only point which needs to be discussed in the case. We think the court committed no error in its ruling upon it, and as there is no error in either of the other assignments, the judgment must be affirmed.

Judgment affirmed.