## Cleaver and wife *versus* Scheetz and wife.

1. Cleaver gave a mortgage to Scheetz, a married woman; her husband deserted her, and she boarded with Cleaver. On a scire facias on the mortgage Cleaver could not set off the boarding, Mrs. Scheetz not being a feme sole trader.

2. The Acts of 22d February 1718 and May 4th 1855 (Feme Sole Traders) construed in connection with Married Women's Act of April 11th 1848.

3. Under the Act of 1855, the rights and privileges of a married woman deserted, are not correlative with her liabilities, but are more extensive.

4. Under the Act of 1718 extended by Act of 1855, the liability of a married woman for her debts arises from her pursuing some business at which she works for a livelihood.

5. The Act of 1848 is not repealed by the Act of 1855.

February 9th 1872. Before AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 318, to January Term 1871.

To December Term 1869 of the District Court, a scire facias sur mortgage was issued at the suit of Jacob Scheetz and Christianna his wife in her right, against Elias Cleaver and Anna M. his wife.

[Cleaver v. Scheetz.]

The mortgage was dated February 22d 1867, given by Elias Cleaver and Anna M. his wife, to Christianna Scheetz, to secure the payment of $1500 in one year with interest.

The defendant put in the plea of set-off.

It appeared upon the trial that Jacob Scheetz and his wife were living separate and apart from each other, the husband having deserted the wife. Under these circumstances Mrs. Scheetz went to board with the defendants, the mortgagors. It further appeared that Jacob Scheetz, the husband of Mrs. Scheetz, was residing in Philadelphia, and engaged in business for himself as an apothecary, at the corner of Fifth and Race streets. The question of the trial was, whether the defendants could set off the bill for the board of Mrs. Scheetz against the claim upon the mortgage, which was the property of Mrs. Scheetz. There was no evidence that Jacob Scheetz, the husband, had been applied to for payment of the debt, or that any judgment had been obtained, or execution issued against him.

The defendants in support of their set-off relied upon the 2d section of the Act of 4th of May 1855, Pamph. L. 430, 1 Bright. Purd. 692, pl. 55, which enacts, "that whensoever any husband from drunkenness, profligacy or other cause, shall neglect or refuse to provide for his wife, or shall desert her, she shall have all the rights and privileges secured to a feme sole trader under the Act of the 22d of February 1718, entitled 'An act concerning feme sole traders,' and be subject as therein provided, and her property, however acquired, shall be subject to her free and absolute disposal during life, or by will without any liability to be interfered with or obtained by such husband, and in case of her intestacy shall go to her next of kin, as if he were previously dead:" 1 Smith's Laws 99, 1 Bright. Purd. 692, pl. 1.

The court (Thayer, J.) instructed the jury that the evidence of the defendants did not make out a defence to the action, and that they should find a verdict for the plaintiff for the full amount of the mortgage, with interest from February 22d 1867.

The verdict was for the plaintiff for $1837.50.

The defendants took a writ of error, and assigned for error that "the court erred in instructing the jury that the evidence of the defendants did not make out a defence to the action."

J. Otterson, for plaintiffs in error, referred to Acts of 1855 and 1718; Married Woman's Act, April 11th 1848; Pamph. L. 536, 2 Bright. Purd. 1005, pl. 13, &c.; Black v. Tricker, 9 P. F. Smith 13; Burke v. Winkle, 2 S. & R. 189.

M. H. Todd and T. Cuyler, for defendant in error.—In an action against husband and wife, to charge the wife's separate estate, the plaintiff must set forth in his pleadings such facts as

bring the case within some one of the exceptions contained in the Act of 11th April 1848: Murray *v.* Keyes, 11 Casey 384; Parke *v.* Kleeber, 1 Wright 251.

Set-off must be in the same right: Darroch *v.* Hay, 2 Yeates 208; Potter *v.* Bird, 4 Watts 15; Stuart *v.* The Commonwealth, 8 Id. 75.

They referred to the Acts of 1718, 1848 and 1855, and commented on them, and also to Black *v.* Tricker, and Burke *v.* Winkle, *supra.*

The opinion of the court was delivered, May 13th 1872, by

AGNEW, J.—This was a scire facias in right of Christianna Scheetz, the owner of a mortgage given by the defendants, Elias and Anna Cleaver. One of the pleas was set-off, under which the defendants claimed to recover a boarding bill against Mrs. Scheetz. The short plea of set-off may be presumed to be in the same right as the action of scire facias; that is, against Christianna Scheetz for her own debt. This necessarily raises the question of the right of the defendants to maintain an action against Mrs. Scheetz, which it is claimed will lie against her under the Act of 22d of February 1718, 1 Smith's Laws 99, and the Act of 4th of January 1855, Pamph. L. 430. It is not doubted that the evidence shows such a desertion of Mrs. Scheetz by Jacob, her husband, as brings her within the provisions of the Act of 1855, and this leads into an examination of these provisions, in order to determine the question of her liability to suit for her maintenance. The Act of 1855 is much wider in its range than the Act of 1718. It is entitled an act relating to certain duties and rights of husband and wife and parents and children. The first section regulates the power of a married woman to dispose of her property by will, as between her husband and herself. The second provides for the case of husbands deserting their wives, or neglecting or refusing to maintain them, and consists of two branches. The first branch declares that she shall have all the rights and privileges secured to a *feme sole* trader under the Act of 1718, *and be subject as therein provided.* The second branch declares that her property, real and personal, howsoever acquired, shall be subject to her own absolute disposal during life or by will, and in case of intestacy shall go to her next of kin, as if he were previously dead. The third section provides for the case of children and their mother's rights and duties, in case of their father's neglect or refusal to maintain them. The fourth section appoints a mode of declaring a wife a *feme sole* trader. Further regulations are contained in the remaining sections. A consideration of the entire Act of 1855 makes it evident that the rights and privileges of a married woman deserted by her husband or left unprovided for by him are not exactly correlative to her liabilities, and that the former are more

extensive than the latter. The liabilities expressly provided for in the Act of 1855, are those contained in the first branch of the second section, which secures to her the privileges of a *feme sole* trader under the Act of 1718, and makes her "*subject* as therein provided." This sends us to the Act of 1718 to ascertain the extent of her liability. The first section declares that "when any mariners or others are gone, or shall hereafter go to sea, leaving their wives at *shopkeeping, or to work for their livelihood* at any other trade in this province, all such wives shall be deemed, adjudged and taken, and are hereby declared to be, as *feme sole* traders, and shall have ability, and are by this act enabled to sue, and *be sued*, plead and *be impleaded* at law in any court or courts of this province, during their husband's natural lives, *without naming their husbands* in such suits, pleas or actions; and when judgments are given against such wives for any debts contracted, or sums of money due from them since their husbands left them, executions shall be awarded against the goods and chattels *in the possession of such wives*, or in the hands or possession of others in trust for them, and *not against* the goods and chattels of their husbands," &c. From the terms of the Act of 1718, it is very evident that the liability of a married woman for her own debts as a *feme sole* trader, arises out of the fact that she follows some trade or business at which she works for a livelihood. Indeed it is only in the prosecution of such a calling that she is likely to contract debts, or be entitled to claims, requiring the aid of the law by suits for or against her. This is one of the points decided in Jacobs *v.* Featherstone, 6 W. & S. 346, where issue was taken on the fact whether the defendant, Mrs. Featherstone, was a *feme sole* trader within the meaning of the Act of 1718. The court below nonsuited the plaintiff on the evidence, and this court, in affirming the judgment, said that there is no *feme sole* trading by married women except as regulated by the Act of 1718. "It is her being left to contract debts for which her husband's person cannot be reached by process, that gives her *the credit* and subjects her to the responsibility of a *feme sole*." Stress was laid also on the fact that the husband was resident in the same city with her when the debt was contracted. If then, as the act clearly imports, there must be a business in which credit is given to the wife out of which the rights of creditors must spring, it is manifest the wife must elect to pursue a business before any liabilities can exist under the Act of 1718. The fact that the Act of 1855, extending the provisions of 1718 to wives deserted or neglected by their husbands, provides for a certificate to be issued by the Court of Common Pleas on her petition, to declare her a *feme sole* trader, strengthens the position that it is only to married women pursuing a business or trade, the liabilities of the Act of 1718 extend. This certificate is not essential to her power to contract

[Cleaver *v*. Scheetz.]

as a *feme sole*, as held in Black *v*. Tricker, 9 P. F. Smith 13.
Her rights result from the fact of her husband's desertion or neg-
lect to provide for her, and not the certificate. But, the object,
as stated by the Act of 1855, being to enable creditors, purchasers
and others, to transact business with her, with safety and certainty,
it evidences the understanding of the legislature that she would
be engaged in some business requiring this precaution to enable
creditors to deal safely with her. What we have now said is
therefore entirely consistent with the opinion in Black *v*. Tricker.
There the question arose as to the wife's right of property under
the second branch of the Act of 1855. Here the question is upon
her liability for the payment of debts under the first branch of
that section extending to her case the provisions of the Act of
1718 as to *feme sole* traders. In Black *v*. Tricker we held that a
wife's acquisitions, after the desertion of her husband, will be pro-
tected under the Act of 1855 from her husband's creditors. Here
we now hold that a wife is not liable for debts as a *feme sole* trader
under the Act of 1718, as extended by the Act of 1855 to cases
of desertion, or neglect or refusal of her husband to provide for
her, unless she has engaged in some trade, business or employment
pursued by her for a livelihood, to constitute her a trader. The
evidence here shows that the husband of Mrs. Scheetz resided in
the same city with his wife, and was engaged in business ; and does
not show that she was ever engaged in business or worked at any
trade or employment for a livelihood in the course of which the
debt in question was created. The bill proposed to be set off was
one for boarding, for which, so far as it now appears, her husband
was liable. To hold under such circumstances that her separate
estate shall be made liable for her maintenance, would make her
condition since the Act of 1855 worse than it was before. It
would also contravene the Married Woman's Act of 1848, which
protects her property from execution for debts, even for her main-
tenance, unless the property of her husband shall have been first
exhausted. The Act of 1855 does not repeal the Act of 1848 in
terms, and no repeal can be implied except for plain repugnancy.
Such repugnancy nowhere exists, except in the first branch of
the second section, which subjects a married woman to the law
relating to *feme sole* traders under the Act of 1718. The Act of
1848 being a general law regulating the condition of married
women as to their property, thus standing unrepealed, strengthens
the position that they cannot be made liable for debts unless when
engaged in trade or business, according to the terms of the Act
of 1718. We think the learned judge was right, therefore, in
holding that the set-off was not good under the evidence, and the
judgment is affirmed.