## Flanagan's Estate.

*Husband and wife—Married women—Feme sole trader—Separation
—Reconciliation—Interest of husband in wife's estate—Acts of April 22,
1718, 1 Sm. Laws, 99, and May 4, 1855, P. L. 430.*

A certificate of a wife as a feme sole trader, which covers the authority contained in sec. 2 of the Act of May 4, 1855, P. L. 430, in so far as it relates to the will of a wife denying to her husband any of her estate, is overcome by a reconciliation which has taken place some time before her death in good faith; and in such a case the husband is entitled to take against the will of the wife as though the certificate were not in existence.

Argued Oct. 13, 1914. Appeal, No. 70, Oct. T., 1914, by Sarah Travis, from decree of O. C. Phila. Co., April T., 1913, No. 22, dismissing exceptions to adjudication in Estate of Bridget Flanagan, deceased. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that Bridget Flanagan died on January 7, 1912, leaving to survive her William Flanagan, her husband, but no issue. By her will she gave her husband the sum of $1.00. William Flanagan filed his petition to take against her will the share in her estate she would have taken in his, including the preference of $5,000 given by the act of April 1, 1909. This claim was resisted on the ground that some time prior to her death, on or about July 5, 1904, he had deserted his wife and that prior thereto had neglected and refused to support her, and that proceedings had been brought against him in the desertion court and an order made therein, and that, in conformity with the Act of May 4, 1855, P. L. 430, sec. 4, the testatrix had petitioned the court of common pleas No. 5 to be declared a feme sole trader, and after due proceedings

therein such decree had been ordered July 9, 1906, granting her the rights of a feme sole trader.

In answer to this it was shown on behalf of the husband that he had, at the wife's invitation, subsequently become reconciled to her and had lived with and supported her some sixteen months before her death and up and until a few days before her death.

The auditing judge, ANDERSON, J., allowed the husband's claim.

Exceptions to the adjudication were dismissed in an opinion by LAMORELLE, J.

*Errors assigned* were in dismissing exceptions to adjudication.

*Ulysses S. Koons*, with him *Chas. F. Gerhard*, for appellant.—The question before the court is not what property rights a feme sole trader had under the act of February 22, 1718, but what right of ownership and absolute disposal of property, real and personal, was conferred upon feme sole traders by the concluding portion of sec. 2 of the act of May 4, 1855: Moninger v. Ritner, 104 Pa. 298; Cleaver v. Scheetz, 70 Pa. 496; People's Saving Bank v. Denig, 131 Pa. 241; Barber's Petition, 17 Pa. Dist. Rep. 148; Duquesne Savings Bank's App., 96 Pa. 298.

It is a remedial statute and to be benignly interpreted. That is in favor of the wife's right to dispose of her property as though her husband were nonexistent: Cleaver v. Scheetz, 70 Pa. 496; Simons' Est., 20 Pa. Superior Ct. 450; Foreman v. Hosler, 94 Pa. 418; Ewing's App., 101 Pa. 371; Wilson v. Coursin, 72 Pa. 306; Kramer's Est., 50 Pitts. L. J. 218.

If the husband can thus elect, we practically decide that the wife's estate, by his return after she is declared a feme sole trader, is not only subject to the husband's election, but is also subject to the rights of his creditors, so that during all the years he was absent she was not

only working for a worthless husband, but also for his creditors. Neither do we believe the act had any such intention and the ingenious contention of counsel for the husband in this case is unsupported by any decision and is directly opposed to the plain and unmistakable provisions of the act of May 4, 1855.

*James J. Breen*, for appellee.—The right to deprive a husband of his share in his wife's estate is not an incident of feme sole tradership: Jacobs v. Featherstone, 6 W. & S. 346; Cleaver v. Scheetz, 70 Pa. 496.

The husband may be deprived of his interest only by virtue of the Act of May 4, 1855, P. L. 430: Dickinson v. Dickinson, 61 Pa. 401; Moringer v. Ritner, 104 Pa. 298; Cleaver v. Scheetz, 70 Pa. 496; Foreman v. Hosler, 94 Pa. 418.

The act does not apply to this case because the husband has not abandoned or deserted his wife for one year or upwards prior to her death: Weller v. Weller, 213 Pa. 265; White's Est., 188 Pa. 633.

OPINION BY KEPHART, J., February 24, 1915:

The question before the court is the effect of a certificate of feme sole trader, under sec. 4, Act of 1855, P. L. 430, as it relates to the wife's will denying the husband any of her estate, as opposed to a reconciliation in good faith, as it relates to the estate of the husband under the intestate laws. The construction of two acts of assembly, wherein the legislature has set forth the circumstances under which a married woman may transact business, dispose of her property, and in some instances incur obligations against her husband's property, is involved. The first of these acts, 1718, dealt with cases wherein mariners are gone or shall hereafter go to sea, and the second is the act of 1855, which governs cases of desertion and nonsupport. The wife, under the first act, was declared to be a feme sole trader; that she could "sue and be sued, plead and be

impleaded" and have judgments executed against goods and chattels in her possession or the possession of others for her; she had power to contract debts against the husband's estate for its preservation or for the support of herself and children.

Under sec. 2 of the act of 1855, the wife acquired all of the powers of the act of 1718 and in addition certain other powers not contained therein, namely, the right to dispose of her real and personal property by deed or will. As stated in Cleaver v. Scheetz, 70 Pa. 496, "The second (section, Act of 1855) . . . . consists of two branches. The first branch declares that she shall have all the rights and privileges secured to a feme sole trader under the act of 1718, and be subject as therein provided. The second branch declares that her property . . . . shall be subject to her own absolute disposal during life or by will:" Foreman v. Hosler et al., 94 Pa. 418. There is here no attempt to enlarge the powers of a feme sole trader under the act of 1718, nor does the act create, by the name, a new class of feme sole traders. All of the privileges of a feme sole trader are specifically granted under the act of 1718. The additional powers conferred by the act of 1855 do not arise by virtue of feme sole tradership; they are peculiar to the circumstances specified in the second section of this act. This is the logical effect of Cleaver v. Scheetz, supra, and other cases. The act of 1718 was not based upon the unfaithful conduct of husbands, while that part of the act of 1855 relating to this subject deals solely with this unfaithful conduct and the violation of marital relations.

When the circumstances which are the basis of the wife's right to act exist, these rights are fixed without decree, certificate or order of court. The legislation deals with a condition: Black v. Tricker, 59 Pa. 13; Elsey et al. v. McDaniel, 95 Pa. 472; Orrell v. Van Gorder & Shepard, 96 Pa. 180. The privileges thus conferred continue as long as the circumstances, which

are the basis for the privileges, continue. Business relations could not succeed to any great extent, when dependent for their legality upon oral proof necessary to establish the existence of these circumstances. Therefore, that creditors, purchasers and traders may with certainty and safety transact business with a married woman, a certificate is provided for in sec. 4. It declares to all such persons dealing with the wife that the wife has been deserted or denied support, that she has power to (1) transact business as a feme sole trader, (2) to convey her land by deed, (3) to dispose of it by will, (4) if she die intestate her property may be given to her next of kin. The section further declares that this certificate shall be conclusive evidence of authority until revoked. It is evident from reading the section that the legislature intended the certificate to cover only the business transactions which might be carried on by the wife; but the language used, it is urged, is broad enough to cover all the features of this section. We are not prepared to say that the effect of the certificate should be limited to this apparent intention, the transaction of business while in life, and that after death it is not conclusive on any condition or set of facts. The pinch of this case, and the cause for attack, comes from the fact of a reconciliation between the husband and wife, which occurred a long time before her death, but after she had been declared a feme sole trader and made a will denying her husband any of her estate. In considering the conclusiveness of the certificate as affecting this condition, the purpose of the act, as well as that of the section just referred to, should be considered. The act deals with broken or suspended marital relations. It is not intended to create a barrier to the future enjoyment of those relations, nor does it countenance reconciliation not in good faith, continued for such length of time as may be adjudged evidence of good faith; or, indeed, the facts upon which Weller v. Weller, 213 Pa. 265, and other similar cases were decided might

be considered sufficient to enable the husband to avoid the consequences of the act. Assuming that the certificate in this case embraced all the authority of sec. 2, we are urged to say, that so long as it is unrevoked this authority continues, notwithstanding the absence of circumstances upon which the authority or right is based; in other words, that from the moment the certificate is granted the door is closed against the rehabilitation in law of the right of the husband to participate in his wife's estate, unless this certificate (which he may never know of) is revoked, and it can only be revoked for failure on the part of the wife to perform the duties enjoined by the act, none of which relate to the husband. We cannot conceive that this was intended by the legislature, who, for years, have been enacting laws which have for their purpose the preservation and strengthening of marital relations. The conclusiveness of the certificate must be viewed in this light. Where a reconciliation exists the reason for the law does not exist.

We are considering in this appeal only the right of the husband to take against the will of the wife under the intestate laws, and whether for that purpose the reconciliation overcomes the certificate, placing the husband in full possession of his estate as though the certificate was not in existence. To have this effect, the burden is on the husband to prove that no desertion or refusal to support existed within the meaning of the act. We cannot outline the measure of proof necessary. Each case depends upon its individual facts; but courts have not been slow, in sustaining the integrity of marital relations, to seize upon slight evidence of cohabitation as being sufficient to bar a divorce on the ground of desertion. There is abundant evidence to sustain the findings of the learned auditing judge that a reconciliation took place. We therefore hold that a certificate, covering all the authority contained in sec. 2 of the act of 1855, as it relates to the will of a wife denying a husband any of

her estate, is overcome by a reconciliation, having taken place some time before death, in good faith, and that the husband is entitled to take against the will of the wife as though the certificate was not in existence. This conclusion, with respect to the disposition of the wife's estate at death, is strengthened when sec. 5 of this act is read in connection with sec. 2 and sec. 4. Sec. 5 provides that the husband shall be denied his estate in the wife's property upon his failure to support or upon his desertion for one year previous to her death. The language indicates at least that the period of time would be next preceding her death. To give this section effect we must consider the question of reconciliation, and when this is done, it is clear to our mind that the legislature did not intend by the certificate to deny to the husband the estate given him by law.

In a conveyance, inter vivos, the certificate unrevoked may be conclusive evidence of the right or power of the wife to convey without the joinder of her husband; where reconciliation takes place it may be an open question whether the husband is thereby deprived of his estate given by law. We are not called upon to decide it in this appeal. We do not, however, view the language of Mr. Justice PAXSON, in Ewing's App., 101 Pa. 371, "Under the act of 1855 a person dealing with a feme sole trader has no occasion to look beyond the certificate," as contrary to the opinion just suggested. While in that case there was a reconciliation the question of the husband's curtesy was not involved and the learned justice doubts very much, under those conditions, whether he could be denied his curtesy. "Indeed, it is at least a question whether the curtesy in the land would pass by a conveyance to which he was not a party." It is there held that the decree is conclusive of her right to sell the property without the joinder of her husband; or to the same extent that the husband may sell his property without the joinder of the wife, but not to disturb or bar her right of dower. Nor is the case

of Moninger v. Ritner, 104 Pa. 298, in conflict; the question of reconciliation was not before the court.

Assignments of error are overruled and the decree affirmed at the cost of appellant.