## Conley and Wife' *versus* Bentley.

1. Where judgments have been entered against a husband, his declarations that certain property belongs to his wife are inadmissible in evidence as against creditors, and should be withheld from the jury, although during the trial no objection was made to their admission.

2. A husband may make a gift to his wife or a settlement upon her, which equity will sustain as against creditors, in the absence of a fraudulent intent, and the question of such intent should be left to the determination of the jury.

3. *It seems*, that the 2d section of the Act of May 5th 1855, is in *pari materia* with the Feme Sole Trader Act of February 22d 1718. Under said section it is not necessary that there should be the decree of any court that a wife is to be regarded as a feme sole trader, to entitle her to accumulate and hold property against her husband and his creditors; the right results from proof that she has been thrown upon her own resources for support, and that her husband has deserted her or neglected to provide for her from any cause.·

April 2d 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas of *Wayne county:* Of January Term 1878, No. 196.

Ejectment by George F. Bentley against Andrew Conley and Eliza Conley, his wife.

At the trial, on behalf of the plaintiff, two deeds were offered in evidence; one from Alonzo Bentley to Eliza Conlin, dated June 2d 1860, for one of the lots in suit; and the second, dated February 3d 1868, from Phineas Goodrich, executor of Daniel Kimble, to said Eliza Conlin, for another lot. It was admitted that Eliza Conlin was a married woman, the wife of James Conlin, deceased, at the time of the execution of these deeds of Bentley and Goodrich, and that she was, at the time of trial, the wife of Andrew Conley, the co-defendant in this action. Plaintiff also offered the record of two judgments; one entered in 1868, and one in 1870, against James Conlin, and the record of their revival after Conlin's death against his widow and administrator. Upon one of these judgments execution had issued and the plaintiff had bought the properties at sheriff's sale.

The defendant, Eliza Conley, testified that she was married to James Conlin at Poughkeepsie, N. Y., in 1848; that he remained with her only a few days, and shortly thereafter she removed to Connecticut, where she lived for some fifteen months, working a part of the time as a domestic, and at other times going out sewing; that during this period her husband visited her occasionally; that when she left Poughkeepsie she had $45 given her by her sisters; she then went to New York to live, where her husband again left her; with the money given to her by her sisters and her accumulations in Connecticut, in all $100, she started a small candy shop;

[Conley v. Bentley.]

for several months, while keeping this store, her husband lived with her, and then left her, going to Rondout, N. Y.  She sold out her shop for $75, and followed him to Rondout; where she kept another store; at this time she had about $200, and it was agreed between her husband and herself that each should keep their own earnings and dispose of them as they pleased; that in 1852 they moved to Honesdale, Pennsylvania; Conlin then commenced boating on the canal, and she kept boarders, raised fowls, took in sewing and worked and traded in various ways; her husband also kept a little saloon, which she attended to; did not know what became of the proceeds of saloon; Conlin was extravagant and dissipated in his habits, and did not contribute anything to the support of his family, consisting of his wife and two children; in 1857 she contracted with Bentley for one of the lots in question, and paid him therefor in instalments, receiving a deed and recording the same in 1860; in 1863, contracted with Goodrich for the other lot, for which she received a deed in 1868, which was duly recorded; that the aggregate amount paid for these lots was $350; the deeds were made to her alone, and none of the purchase-money was received from her husband.  She also testified that Conlin was not in debt when these purchases were made, and did not at the time contemplate entering into any hazardous business.  Conlin knew that his wife purchased these properties, and frequently declared in the presence of witnesses that they belonged to his wife, and were purchased with her earnings.  It was also shown that she made the contract for the lots herself, that she alone paid the money; that she said she wanted it fixed so that she could hold the land herself, because it was her money.  It also appeared that in contracting bills for the house, they were made out and receipted in her name, and that the bills for the boarders were also so made.

In rebuttal, evidence was given to show that the note on which judgment was entered against Conlin, was given by him for lumber which was used upon the building on one of these lots, but upon cross-examination it appeared that part of it was also used in the repair of a boat of Conlin's.

Among the points submitted by the defendants were the following, to which are appended the answers of the court:

2. If the jury believe that Eliza Conley received from her relatives any portion of the money with which she paid for the property in question she holds an interest in the lands to the extent of the money so received and paid, which is good as against the purchaser at sale by the sheriff under an execution against her husband.

Ans.  " We answer this in the negative, because there is no affirmative evidence to sustain it.  The purchase of the land and the building thereon were several years after the receipt of the $45 from her sisters."

[Conley *v.* Bentley.]

3. If the jury believe that James Conlin, the former husband of Eliza Conley, the defendant, by reason of habits of drunkenness, profligacy and other causes, neglected to provide for his wife, and she, by her labor, industry and frugality, provided for herself and accumulated property, she is entitled to claim and hold the same as a *feme sole* trader against her husband, his creditors and the whole world, and if she invested the money so accumulated by her in the land in controversy, her title is good as against the purchaser at sheriff's sale under execution against her husband.

Ans. " We must negative this point for the reason that there is no evidence that James Conlin, at the time of the acquisition of this property, was so habituated, or had neglected to provide for his wife."

4. If the jury should find that Eliza Conley does not hold the entire interest in said property, but holds an interest to the extent of such sums of money as from the evidence they believe she invested in said property, they may render a verdict for the defendants, conditioned that the verdict shall be released upon the payment by the plaintiff, within such time as they shall name, of a sum of money equal to the interest of Eliza Conley, as they shall fix the amount.

Ans. " We are compelled to negative this proposition. It is altogether too broad and unsupported by legal authority."

In the general charge the court, Waller, P. J., said :—

" The plaintiff in this case can take no greater or better title by virtue of his sheriff's deed than James Conlin had at the time these judgments were obtained. Mrs. Conley testifies that she received from a sister $25 at the time of her marriage ; and that some time afterward she sent $10 to a sister in Ireland, who, after her arrival in this country, sent her, defendant, $20. It is not claimed that she ever had any other money, except what she earned during coverture, with which to purchase these two lots (the cost of which seems to have been $350 and upwards), and to erect the buildings which were thereafter erected thereon. [She testified that she kept boarders, took in sewing, ran a grocery, &c., her husband running a boat part of the time, and the remainder of the time living at home and keeping the grocery.] Now, aside from her own evidence and the declarations of the husband, made after the judgments had been obtained, there is nothing to take this case out of the well-established rule of law, that, so far as regards creditors, all the money and personal property of the family are presumed to be the property of the husband until the contrary be shown, as well as the earnings of the family, with some exceptions : Walker *v.* Reamy, 12 Casey 410.

" [The declarations of the husband that certain property belonged to his wife, are inadmissible as evidence in favor of the wife :] Parvin *v.* Capewell, 9 Wright 89."

[Conley *v.* Bentley.]

The plaintiff submitted the following point, subjoined to which is the answer of the court :—

The court is requested to instruct the jury that under all the evidence in this cause, the verdict of the jury must be in favor of the plaintiff.

Ans. "In answer to this, we say to you that the jury must be satisfied by evidence, and there is manifestly no evidence which proves the fact in controversy, upon which we think the court should submit the question to the jury. We therefore affirm plaintiff's point, and upon the whole case we direct a verdict for the plaintiff."

The defendants then took this writ, inter alia, assigning for error 1 and 2, the foregoing portions of the charge in brackets, 4, 5 and 6, the answers to defendant's points, and 11, the answer to plaintiff's point.

*H. M. Seely* and *P. P. Smith*, for plaintiffs in error.—Not having asked that the declarations of Conlin should be rejected or stricken out during the trial, the plaintiff waived all objection to their competency, and it was unfair for the court to rule them out in the general charge. Whensoever any husband, from drunkenness, profligacy or other cause, shall neglect or refuse to provide for his wife, she shall have the privilege of a *feme sole* trader, &c. : Act 4th May 1855, § 2, Purd. Dig. p. 1008, pl. 24; Black *v.* Fricker, 9 P. F. Smith 16. The fourth point of defendants should have been affirmed.

A wife may have an interest in lands to the extent of the money paid by her, and under the practice of our courts, where equity is administered through the forms of the common law, her rights may be protected by a conditional verdict: Hauberger *v.* Root, 5 Barr 12; Coolbaugh *v.* Pierce, 8 S. & R. 419. The court negatived the fifth point on the ground that the transaction is not in the proper form of a settlement upon the wife. There is no special form required to vest a title in the wife. Bowser *v.* Bowser, 1 Norris 57; Nippes's Appeal, 25 P. F. Smith 472; Morris *v.* Zeigler, 21 Id. 450; Penna. Salt Co. *v.* Neel, 4 Id. 9; Townsend *v.* Mayward, 9 Wright 198.

Was this transaction fraudulent as to creditors? To have constituted such fraud there must have been a definite purpose to defeat creditors by the act alleged to be fraudulent, and this is always a question for the jury: Williams *v.* Davis, 19 P. F. Smith 21; Mullen *v.* Wilson, 8 Wright 413; Thompson *v.* Thompson, 1 Norris 378. That the husband is not shown to have owned any other property is immaterial: Nippes's Appeal, 25 P. F. Smith 472. Or that the judgment-creditor had no knowledge that the title was in the wife: Morris *v.* Zeigler, 21 Id. 450.

*George G. Waller* and *E. O. Hamlin*, for defendant in error.—

[Conley *v.* Bentley.]

The declarations of an insolvent or embarrassed husband that certain property belonged to his wife, is not admissible in evidence in favor of the wife: Parvin *v.* Capewell, 9 Wright 89; Gamber *v.* Gamber, 6 Harris 365; and it would have been manifest error to have permitted a verdict to be found on incompetent evidence, even if the attention of the court was not called to it at the proper stage of the trial. This is not one of the class of cases wherein the wife is authorized to act as *feme* sole trader. No separation or desertion; both living together, and both earning money; and no evidence but the wife's that his money did not go into the purchase. The wife claimed that she paid for the entire property; but it was out of her earnings after marriage, except it be a trifling sum; hence there could be no conditional verdict.

Conlin and wife lived together like any other husband and wife, so far as the public knew. They both attended to business, and the very debt on which the property was sold was at least half of it for materials furnished to build and repair a house on these lots. The evidence on the part of plaintiff below is that Mrs. Conley said the property was purchased with the joint earnings of herself and husband. The wife's title depends upon her own unsupported evidence. We submit that, after withdrawing the declarations of the husband from the jury, there was manifestly no evidence which proves the fact claimed by the wife.

Mr. Justice WOODWARD delivered the opinion of the court, May 6th 1878.

Whether the assumption by the court below that the same grocery was superintended at different times by Mrs. Conley, one of the defendants, and by James Conlin, then her husband, was accurate or erroneous, depended on the testimony. On behalf of the defendants, it was insisted on at the trial, and at the argument here, that two separate establishments were kept at different periods by the husband and wife respectively. The statements of the witnesses were not sufficiently definite and clear to warrant the conclusion that the judge was mistaken in the view of the facts he presented to the jury. Perhaps, in connection with the other evidence in the cause, these facts should have been left to be found by the verdict, but the ground alleged in the first assignment of error would not of itself justify a reversal of the judgment.

Although the testimony as to James Conlin's declarations had been heard without objection, it was nevertheless the duty of the court to withdraw it from the consideration of the jury. The declarations were stated in the charge to have been made after the entry of the judgments under which the lots were sold to the plaintiff. In Gamber *v.* Gamber, 6 Harris 363, Chief Justice BLACK said that " declarations of an insolvent husband cannot, under any circumstances, be evidence for the wife." And it was held in Parvin *v.* Capewell, 9 Wright 89, that " a post-nuptial settlement of pro-

[Conley *v.* Bentley.]

perty on a wife admits of other evidence than the declaration of the husband after he has fallen into embarrassments."

In the fourth point presented on the part of the defendants, the court were asked to charge that if the property in dispute was owned in part by Mrs. Conley, and in part by her first husband, James Conlin, her interest should be secured by a conditional verdict, which should recognise it and fix its value. The sixth error has been assigned to the refusal of this point. The main, broad, vital question in the trial was whether by her contracts, by the payments which she made, and by the conveyances she received in her own name, Mrs. Conley acquired a valid title to this property. If she did, expenditures made afterwards by her husband for its improvement could not have the effect of changing the ownership in whole or in part. Materials furnished to him on credit towards the erection of buildings would create no tangible title which a creditor could seize and sell under a judgment for their value. Furnished on the credit of the buildings, they would have afforded to the material men the foundation for mechanics' liens. Furnished to the husband on the credit of the wife, they might have supported an action against her as having been employed to improve her separate estate. But it would be a novel application of legal rules that would make such a contract the means for the acquisition of an interest in the property, either for the benefit of the husband or for that of his creditor. It is taken for granted that the fourth point was presented in view of the evidence that one of the judgments under which the lots were sold was in part for materials which entered into the construction of the buildings. The $45 given to Mrs. Conley by her relatives had been made the ground for the second point, and that the court was justified in refusing to affirm, as well because of the remoteness of the date when the money was received, as of the inadequacy of its amount. If the fourth point was based on the theory that payments were made, while the contracts were running, out of the common earnings of the husband and wife, it is difficult to see why established principles would not require that the sole ownership should be vested in the husband. Conditional verdicts under the practice in such precedents as Coolbaugh *v.* Pierce, 8 S. & R. 418, and Hauberger *v.* Root, 5 Barr 508, have been rendered only in favor of a beneficiary entitled to some actual legal or equitable interest in land under a deed, will, trust or contract. It would be a perversion of the practice regulating such verdicts to introduce it into such a case as this, while it would be extending to creditors the benefits of the mechanics' lien laws in a very peculiar and incongruous way.

Of the remaining assignments in error, discussion in detail is not required. The eleventh and last complains of the instruction to the jury that the plaintiff had the right to recover because there was no evidence by which Mrs. Conley's title could be supported.

[Conley *v.* Bentley.]

In this withdrawal of the cause, it is believed that injustice was done to the defendants. The contracts had been made in Mrs. Conley's name, while she was James Conlin's wife, with his acquiescence and assent. There was testimony from which the jury might have inferred that long before the removal to Honesdale, it had been agreed that she should support herself, retain her own earnings, and have the right to make any disposition of them she might choose. There was testimony also that the payments on the contracts were made by her exclusively. The deeds were executed to her, and appear to have been promptly recorded. The first judgment against Conlin was obtained in a suit begun on the 26th of November 1868, nearly ten months after the second deed—that from Daniel Kimble's executor—was delivered. It was alleged on behalf of the defendants at the trial, that when the property was bought, Conlin owed no debts, was engaged in no business involving financial hazard, and had no intention to enter into such a business. And it was alleged that he did not become embarrassed in any way until the property had been wholly paid for, and the last conveyance had been executed. It is true that to a large extent the proof of material facts rested on Mrs. Conley's testimony. But the papers were in evidence, and there was outside testimony as to the relations the husband and wife bore to each other, as to the family's mode of life, and as to Conlin's dissipated habits.

Upon such facts as those thus appearing and alleged, the course of decision has long been uniform and distinct. Rogers *v.* Fales, 5 Barr 154, which was decided before the passage of the Act of 1848, involved the title to a chattel. The judgment was affirmed on the charge of Judge Bell, in which he said: "As a general rule, personal property acquired by a wife passes to and will belong to her husband, whether acquired before or subsequent to the commencement of the coverture. But a married woman may acquire a separate property in chattels, either by the gift of a stranger or of her husband. So where the property is purchased by the money, or created by the labor and industry of the wife, though, prima facie, it would be subject to his marital rights, yet he may consent that it shall be the property of his wife, to be held as of her separate estate, and if he do so, it is freed from his dominion." While a conveyance of real estate to a wife by a husband, to secure it to her free from debts which he might contract in a new business into which he was about to enter as a partner, is of no effect against creditors who become such in the business of the partnership, yet the object of the conveyance is a question of fact for the jury to decide: Mullen *v.* Wilson, 8 Wright 413. A husband may, without the intervention of a trustee, settle upon his wife a reasonable portion of his estate, if it be not done in contemplation of future indebtedness, and he be free from debt, or perfectly solvent after the payment of all his existing debts; and no legal presumption of

[Conley v. Bentley.]

fraud arises upon such a settlement, but the question is one of fact for the jury as to the intention of the parties: Townsend v. Maynard, 9 Wright 198. In that case, the qualification that the settlement should not exceed a reasonable portion of the husband's estate, was apparently derived by Judge READ from the opinion of Mr. Justice THOMPSON in Hinde's Lessee v. Longworth, 11 Wheaton 199, in which it was held that the mere fact of the existence of a debt for a small amount would not make a deed from a parent to a child fraudulent, if it could be shown that the grantor was in prosperous circumstances and unembarrassed, and that the gift was a reasonable provision for the child according to his estate and condition in life, and leaving enough for the payment of the debts of the grantor. The opinion of this court in Coates v. Gerlach, 8 Watts 43, contained a similar qualification. It was decided there that a husband may make a gift to his wife, or a settlement upon her, without the intervention of a trustee, which equity will sustain, if it be no more than a reasonable provision for her, proportioned to his circumstances, and not hurtful to his creditors. But the vital question must always be whether creditors, existing or prospective, are to be endangered. The amount of the gift, or the value of the property settled, as proportioned to the donor or settler's whole estate, is an element to enter into the consideration of the design and purpose of a particular transaction. Excessiveness in amount or value would not be enough alone to create the implication of an intended fraud. In Nippes's Appeal, 25 P. F. Smith 472, where a husband made a voluntary conveyance to his wife of land subject to a lien for purchase-money, it was held that the lien was not such a debt as would render the conveyance void as to subsequent creditors, and that, there being no evidence of a fraudulent purpose, the fact that it was all the property the husband owned was immaterial: Williams v. Davis, 19 P. F. Smith 21, which denied to later creditors the right to take advantage of the fact that a mortgage was a lien on land at the time of its conveyance by a husband to his wife, was a precedent for the rule applied in Nippes's Appeal. In Morris v. Ziegler, 21 P. F. Smith 450, a husband had conveyed land to his wife, and a judgment afterwards recovered against him had been purchased by a third person before the deed was recorded. It was ruled, as there was no fraud in the conveyance, and no intentional concealment of the fact of its execution in order to give the husband a false credit, that the title of the wife would prevail against the judgment, and that the failure to record the deed was not such laches as would estop her as against a judgment-creditor of her husband. And in Thompson v. Thompson, 1 Norris 378, it was held that the right of a husband to procure a conveyance of land to be made to his wife, and to settle the land upon her, was not affected by the fact that he had borrowed a portion of the purchase-money at the time of the execution of the deed, if at that time he had no other debts, and was not about to enter into any hazardous business or contract any fresh obligations. It is

manifest from the authorities that the questions in this cause ought to have been left to the determination of the jury. It was the fact, and not the form of the settlement of the property by James Conlin upon his wife, that was in dispute. His agreement, acted on through a series of years, that she should retain the control of her own earnings, and invest them in property in her own name, was as valid a gift as a conveyance would have been which he might have procured to be made to her in consideration of purchase-money advanced by him to the grantor.

In answer to the third point of the defendants, the court ruled that there was no evidence of neglect on the part of Conlin to provide for his wife by reason of habits of drunkenness, profligacy, or other cause. With the advantage the president judge possessed of seeing and hearing the witnesses who were examined, it may be that the ruling was right, although it would seem that there was some direct, affirmative evidence significant enough to be entitled to submission. As the case goes back for a fresh trial on other grounds, it is only necessary to repeat what was decided in Black *v.* Tricker, 9 P. F. Smith 13, that the Act of the 5th of May 1855 is remedial, and is to be interpreted benignly ; that the second section is *in pari materia* with the Feme Sole Traders' Act of the 22d of February 1718 ; and that under that section it is not necessary that there should be the decree of any court that a wife is to be regarded as a feme sole trader, to entitle her to accumulate and hold property " against the husband, his creditors and the whole world." The right results from proof that she has been thrown upon her own resources for support, and that her husband has deserted her, or has neglected to provide for her from any cause.

Judgment reversed, and *venire facias de novo* awarded.