# Overseers of the Poor of the City of Williamsport *versus* Overseers of the Poor of Eldred Township.

A married woman divorced *a mensa et thoro* on account of the cruel treatment of her husband, who has deserted her and moved to another state, can acquire a settlement in her own right entitling her to support as a pauper.

June 4th 1877.   Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.   SHARSWOOD, J., absent.

[Overseers of Williamsport *v.* Overseers of Eldred.]

Certiorari to the Court of Quarter Sessions of *Lycoming county* : Of May Term 1877, No. 220.

This was an appeal, by the Overseers of the Poor of Eldred township, from an order of removal of Sarah Boyer, who had become chargeable to the poor district of the city of Williamsport. It appeared that Sarah was the wife of George Boyer, who owned real estate in Eldred township at and prior to the year 1867. On the 10th of September 1869, upon application by said Sarah, a decree of divorce *a mensâ et thoro* was made by the Court of Common Pleas of Lycoming county, with alimony of $150 per annum.

The causes shown for divorce were the cruel and barbarous treatment of her husband, an attempt on his part to poison her, adultery and desertion. Soon after the decree in divorce, George Boyer sold his real estate and moved to Virginia, where he purchased real estate and acquired a legal settlement under the laws of that state. After the decree in divorce Sarah rented a house in Williamsport at a rental of $6 per month, resided therein and paid the rent for more than two years, when becoming chargeable to the district the order of removal to Eldred township was obtained, that being adjudged to have been her last place of legal settlement.

From this order the Overseers of Eldred appealed.

. Several points were submitted by the Overseers of the city of Williamsport, embodying substantially this proposition : Can a married woman who has been divorced from the bed and board of her husband, acquire for herself a legal settlement by complying with the requirements of the Act of Assembly ?

The court, Gamble, P. J., reversed the order of removal and affirmed the foregoing proposition in an opinion, *inter alia,* saying :—

"By a judicial decree Sarah A. Boyer was divorced from the bed and board of her husband, thus legally changing her right of domicile from his house and home to such other place as she might choose. Does not this necessarily include the right to contract for a new home and the necessaries and comforts of life, independent of her husband, and to that extent to act as a feme sole ? The law is not so inconsistent as to authorize her to live separate and apart from her husband, and withhold the right and power of securing a home and a living elsewhere. Surely, to this extent, she must of necessity be accorded the rights of a feme sole.

"In this case it is only necessary to accord to Mrs. Boyer the humane and beneficial right to acquire a settlement on the common terms prescribed by the legislature for all or 'any person.' By the third paragraph of the ninth section of the Act of 1836, it is provided that a settlement may be gained in any district, 'by *any person* who shall bona fide 'take a lease of any real estate of the yearly value of $10, and shall dwell upon the same for one whole year and pay the said rent.'

[Overseers of Williamsport v. Overseers of Eldred.]

" It is not necessary that the lease here mentioned should be in writing ; going into possession and paying a rent for the premises that are of the yearly value of $10, and dwelling upon the same one whole year, gives a settlement : Beaver v. Hartley, 1 Jones 254.

" The undisputed evidence in this case, is that Mrs. Boyer took a parol lease of a tenement house in the city of Williamsport, of the yearly value or rental of $72, or $6 per month, and dwelt upon the same from July 1st 1871, to April 1st 1874, and paid the rent for the whole period, excepting the months of February and March 1874. That this is a full and literal compliance with all that the law requires there is no room to question or dispute.

" The policy of liberality and humanity which has always characterized the rulings of the courts of Pennsylvania in the administration of her laws designed to ameliorate the condition of the poor, may therefore be concentrated with all its persuasive power against the single doubt of her capacity to acquire the humble right to a legal settlement, which the law so freely accords to *any person.*

" I have no hesitation in arriving at the conclusion that under the law and the evidence, Sarah A. Boyer did acquire a legal settlement in the city of Williamsport, which supersedes the derivative settlement to which she was formerly entitled in the township of Eldred. Whatever legal disabilities may still attach to her by reason of the remaining vestiges of her coverture, she is legally authorized to change her domicile and to live separate and apart from her husband, which necessarily includes the right to make and enforce contracts pertaining to the same, and vests in her the legal beneficial incidents to all such contracts."

The Overseers of the Poor of the city of Williamsport took this writ, assigning for error the action of the court in reversing the order of removal.

*S. T. & H. C. McCormick,* for Overseers of Williamsport.—A divorce *a mensa et thoro* does not destroy the relation of husband and wife so as to make the latter a feme sole.: 2 Bright on Husband and Wife 362 ; Schouler's Domestic Relations 301. In support of their decision the court below cited Starrett v. Wynn, 17 S. & R. 130, but that was a case of desertion. It is contended that no person can obtain a legal settlement who is not *sui juris*, so that the contract between the poor district and the party is mutual. The separation between the husband and wife in this.instance may be destroyed by the parties at any time and she is not such person therefore as the law contemplates. The construction that " any person" who shall bona fide take a lease shall thereby acquire a legal settlement is too literal an interpretation of the Act of 1836.

*R. P. Allen* and *J. M. Gamble,* contrâ.—Under our various Acts of Assembly, many rights are conferred upon married women

[Overseers of Williamsport *v.* Overseers of Eldred.]

to enable them to make contracts and to derive the profits of their labor. The law thus assists them by giving them these rights when abandoned or neglected while married. Is it not unreasonable then to contend that when the law itself decrees a divorce *a mensa et thoro* that a woman so situated has not a right to make a lease or contract and that she does not thus acquire a legal settlement.

Chief Justice AGNEW delivered the opinion of the court, June 18th 1877.

The question presented in this record is whether a wife, who has been divorced *a mensa et thoro*, on account of the cruel and barbarous conduct of her husband, and indignities to her person rendering her condition intolerable, and life burdensome, and whose husband has deserted her, and moved out of the state, can acquire a settlement in her own right, entitling her to support as a pauper. If she cannot her lot is hard indeed, when she becomes old and feeble, and unable to support herself. But we think the effect of the divorce, which separates her from the domicile of her husband, and of his cruel conduct, and final desertion leads to a different conclusion. The place of her husband's settlement is no longer her home. She is cast out to seek a residence and a home where best she can find it, and if this leads her into another township or city, why shall she be denied the privilege of seeking comfort and a support, where the best opening offers to her wandering steps? Humanity and law, its handmaid, do not say nay. Coverture alone bound her to her husband's settlement, because it made her husband's house her home. But when the law separated her from it, she became a houseless wanderer, unless she can find another by her own volition. Then when we add the legal consequences of her husband's conduct, an emancipation from her condition as a feme covert, so far arises, that she is permitted to act as a feme sole in many respects which tend directly to the acquisition of a home.

By the second section of the Act of 4th May 1855, " Whensoever any husband, from drunkenness, profligacy, or *other cause*, shall neglect or refuse to provide for his wife, or shall desert her, she shall have all the rights and privileges secured to a feme sole trader under the Act of 22d February 1718, entitled an act concerning feme sole traders and be subject as therein provided; and her property, real and personal, however acquired, shall be subject to her free and absolute disposal during life, or by will, without any liability to be interfered with or obtained by her husband; and in case of her intestacy shall go to her next of kin, as if he were previously dead." So the third section of the Act of 11th April 1856 declares that " Whensoever any husband shall have deserted or separated himself from his wife, or neglected or refused to support her, or she shall have been *divorced from his bed and board*, it shall be lawful for her to protect her reputation by an action for

[Overseers of Williamsport *v.* Overseers of Eldred.]

slander or libel; and she shall also have the right by action to recover her separate earnings or property." Black *v.* Tricker, 9 P. F. Smith 13, decides that the acts or conduct of the husband, which under the Act of 1855 give rise to these privileges of the wife, establish her rights *ipso facto*, and the decree provided for in the fourth section for the security of creditors, is not necessary to confer them. It says also, that the third section of the Act of 1856 being in *pari materia* proves satisfactorily that a decree as a feme sole trader is not essential to the assertion of her rights and privileges in regard to her property.

In reference to the 2d section of the Act of 1855, Chief Justice THOMPSON said, " The section was designed to suspend the marital rights of the husband as a consequence of the acts enumerated, and at the same time to relieve the wife from her marital disabilities." It will be noticed also that the 3d section of the Act of 1856 expressly includes a case of divorce *a mensa et thoro.* This suspension of marital rights of the husband, and the power to trade, earn property, defend it, and keep it to herself and her children, unite in enabling her to secure a place of business and a home, and thereby to obtain a settlement as the necessary consequence of her legal rights. The fact that in this case Mrs. Boyer did those acts, which, if a feme sole, would secure her a settlement in the city of Williamsport, is not disputed. Having then in this respect the power of a feme sole, as we have seen, it follows that this settlement was legally acquired and the city is liable for her support as a pauper.

Judgment affirmed.