# Ellison *et al. versus* Anderson *et ux.*

1. Under the Act of May 4th, 1855, a married woman, whose husband through drunkenness and profligacy neglects to provide for her and her children, is entitled to all the rights and privileges of a *feme sole* trader.

2. She may purchase real estate with her separate earnings and hold the same free from her husband or his creditors.

3. A mere failure of a husband to provide for his family will not give his wife the above privileges; it must be occasioned by drunkenness, profligacy or wilful absence or neglect.

4. The burden of proof is upon a married woman to show that she is entitled to the benefits of the Act of May 4th, 1855, and this question, when the evidence is conflicting, is for the jury.

October 9th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Greene county:* Of October and November Term 1885, No. 147.

Ejectment, by Rodman B. Ellison and William P. Ellison, co-partners trading as John B. Ellison & Sons, against Daniel M. Anderson and Jane Anderson, his wife, to recover possession of a lot of ground in the borough of Waynesburg. Plea, not guilty.

. On the trial, before STOWE, P. J., of the fifth judicial district, it was admitted that a valid title to the premises in dispute was

in Samuel Montgomery prior to May, 1879, when he conveyed the same to Jane Anderson, wife of Daniel M. Anderson, for a consideration of $500.

Plaintiffs showed the following title: Between April 9th and December 17th, 1874, plaintiffs sold goods to one Daniel M. Anderson, who was a merchant tailor, to the amount of $1,218.39.

Subsequently plaintiffs recovered a judgment for this amount and issued a *fi. fa.* upon the same in 1882, under which the property in dispute was sold and bought in by plaintiffs, to whom a deed for the same was duly executed by the sheriff.

The defendant, Jane Anderson, claimed title to herself under the deed from Samuel Montgomery and offered several witnesses to show that her husband, Daniel M. Anderson, in the year 1878 and subsequently, had, from habitual drunkenness, neglected and refused to provide for her and her children, twelve in number, and claimed that by reason thereof she became and was entitled, under the Act of May 4th, 1855, to all the rights and privileges of a *feme sole* trader under the Act of February 22d, 1718.

She further showed that she supported the family from her separate earnings as a seamstress and out of her earnings purchased the property in dispute, paying for the same in quarterly instalments. Jane Anderson had no separate estate nor did she ever petition the court for her separate earnings.

It appeared from the evidence that Daniel M. Anderson, being in financial difficulties in 1876, transferred his stock and business to George H. Anderson, a relative in his employ; from the date of this transfer until the death of said George H. Anderson, on December 13th, 1879, the business was carried on in the name of George H. Anderson & Co. During this time Daniel M. Anderson remained in the shop, doing the cutting. He would do enough cutting to keep them busy for a time and then go on a spree. After the death of George, Daniel bought his interest and continued the business alone until the year 1881, when he took in his son, Daniel M. Anderson, Jr.

When Jane Anderson first purchased the property in dispute, R. H. Phelan went on her note for the first $150 of the purchase money, which was paid in part by persons purchasing clothes at Anderson's shop and paying the price of the same to Montgomery. A mortgage was also executed upon the property by Jane Anderson and her husband to Montgomery for the balance of the purchase money; this mor' age was paid for by clothing and $72 in cash. Montgom. y testified that all the money he ever received was represented to him as coming from Mrs. Anderson; and when money was paid by George

H. Anderson & Co., it appeared that Mrs. Anderson would credit them on her work.

It further appeared from the evidence that Daniel M. Anderson, when not intoxicated, was an industrious man.

Plaintiffs requested the court to instruct the jury as follows:

1. "Mrs. Anderson in this issue is claiming the property in dispute in opposition to plaintiffs, who are creditors of the husband, and now are the owners by purchase through the sheriff, of the interest of her husband in the property. The deed upon which she relies is dated since her marriage; and before she can defeat a verdict for the plaintiffs in this case she must show affirmatively, that she not only has received money or other property by ' will, descent, conveyance or otherwise,' but that she actually applied them in payment of the property claimed."

Answer. "This is affirmed. It is hardly applicable to this case, although in general terms it is. She didn't acquire it by ' will, descent or conveyance,' but she did with the consent of her husband, ' otherwise,' that is to say, according to the law of their position—now I am not endorsing it, I am only stating it—upon the presumption that the husband hadn't provided for the wife and she earned the money under the Act of 1855, as her own; and interpreting it in that way, the point is affirmed." (Fourth assignment of error.)

5. "That the evidence in this case is not such as to entitle Jane Anderson, wife of Daniel M. Anderson, to the benefits of the Act of May, 1855, relating to *feme sole* traders. There was not sufficient evidence of the suspension of the marital rights of the husband to relieve the wife of marital disabilities. Mrs. Anderson had no claim to the status of a *feme sole*, at the time of the purchase of the property in dispute."

Answer. "This is refused. This is the question we submit to you to determine under the evidence. It is for you to determine and not for the court. This point is framed upon the hypothesis that there is not sufficient evidence to submit to the jury the fact of the husband not supporting the family. We think there is evidence on that subject sufficient to submit it to you, and evidence, which if you believe such a state of facts to have existed, would not only justify you but make it your duty to find a verdict for the defendants. There is evidence for your consideration upon the question of whether you ought to do that. When there is no evidence, or a mere spark of evidence, or so little that we would be compelled to set aside the verdict if the jury found a certain way, we feel justified in taking a case from the jury; but in this case, we think there is evidence here for your serious consideration, that you ought to scan carefully and closely—evidence offered on the part of

the defendant, here, which if you believe, would not only justify you, but make it your duty to find a verdict for the defendants; and thinking so, we have no right to take the case from you, but submit it under all the evidence, simply saying that the burden of proof is on the defendant to establish to your satisfaction that she is entitled to the benefits of this Act of 1855, in order to justify you in finding for her." (Fifth assignment of error.)

6. "Under all the evidence in this case their verdict must be for the plaintiffs."

Answer. "This is also refused." (Sixth assignment of error.)

The court charged the jury, *inter alia*, as follows: [" The Supreme Court have held in a case of this kind whenever it is made to appear to the satisfaction of the jury, that a husband by reason of drunkenness, profligacy or other cause, has failed, neglected or refused to provide for his wife, that is, to give her a reasonable—I suppose it means—a reasonable and competent living according to his supposed circumstances, or if without her own assistance she is unable to procure enough to eat for herself and family, or if she hasn't sufficient clothing—the word "provide" means, shall give her that which shall be reasonable and necessary, I presume—the construction I would put on it —to keep the soul and body together, at least to keep her from freezing, to do that which is necessary to contribute to her reasonable health and comfort—or if a man from whatever cause, because it may not necessarily be from drunkenness—if he stays away from home, preventing him from doing that which he ought to do to maintain his wife and family—if from any cause so neglects his wife that she is unable to live by reason of what he does for her, then the provisions of this Act come into effect, and the law assumes that thereby he has forfeited his right to her labor, and gives her a right to maintain herself.] . . . .

"A man may make a great deal of money, but if he is drunk a great part of the time, it is not very likely, ordinarily, that much of it will go to the support of his family, because drunkenness costs a great deal; and the evidence of it has a tendency to support the fact that he don't provide for his family, first, because drunkenness makes men careless and indifferent, and they are also apt to be wasteful, and whatever they earn can't go to the wife and family because it is gone before it gets there. Yet drunkenness may become a habit, and a man provide for his family just as liberally as you or I, or even more so. So that the matter of drunkenness is only to be looked at as it bears on the question of provision for the family.

"[If he wasn't drunk at all, and didn't provide for the family, she would have a right to purchase the property and pay for it

with her own earnings, and in case of a contest with her husband's creditors, it would be for the jury to determine, as in this case, whether or not the allegations, taken with the other evidence in the case, were true—that he didn't provide for the family.]

"Now, gentlemen, whenever a person sets up a defense of this kind, or makes an allegation of this kind to take away the *prima facie* rights of others, as it is manifestly in the plaintiffs under the record in this case, the evidence should reasonably and fairly satisfy the jury that it is true.

"[You ought to be satisfied by the weight of the testimony in this case, that Mrs. Anderson was not provided for by her husband from whatever the reason—the apparent reason, if at all, being that of drunkenness. Now, did she have to support this family, or did the husband do it? I don't mean by that, did he not contribute some. I don't apprehend that that is the meaning of the Act. Did he do it substantially, or was the family thrown into such a position by reason of his refusing to provide for them, whether arising from drunkenness or not, that she had herself to go outside of her ordinary domestic duties as a wife, and resort to her needle to keep the children in clothing and food? If she did, then she had a right, if she could do so, to take those earnings, or some of them, if any were left after providing for the children, to buy property and hold it in her own name, and keep the title for it as against her husband's creditors. That is the whole case, gentlemen, as I understand it here. Did the husband provide for the wife, or did he leave her in such a position that she had to resort to her needle to keep herself and children from suffering and perhaps starvation? If he did, then under the Act of Assembly, without any proceedings in court, the law gave her the right from that time to be what we call a *feme sole* trader— earn her money for herself, and spend her money for herself and her family; and if the evidence shows that that relation arose before she bought this property, and that she bought it on credit and subsequently paid for it with the product of her own earnings, then this property is hers, and your verdict ought to be for her; that is, the defendant.] If the evidence, however, don't satisfy you of that fact, and the presumption of the law is the other way, you ought to find for the plaintiffs. [But if the evidence satisfies you fairly and reasonably, that the husband didn't provide for her—for we must harp upon that thing all the time, for that is the question in this case—then your verdict, if she paid for this property out of her own earnings, should be for her.]"

At the conclusion of the charge, counsel for plaintiffs made the following request:—"If your Honor pleases, we would

[Ellison v. Anderson.]

like you to instruct the jury specially on the question of fraud —that even though they believe the evidence is such as to entitle Mrs. Anderson to the benefits of the Act of May 4th, 1855, yet if they believe that the property in dispute was actually paid for with money belonging to Daniel M. Anderson, then their verdict ought to be for the plaintiffs."

By the Court—"I thought I had done that substantially. You don't want me to argue the facts, do you? I might say something you wouldn't want to hear."

Counsel—"You couldn't hurt us much now. You might as well go ahead."

By the Court—"Well, gentlemen, notwithstanding this defendant was entitled to the benefits of this Act in purchasing this property, you must be satisfied fairly and fully by the evidence that she paid for it by the product of her own labor. Not that she paid money, but if clothing was given, that it belonged to her or that she paid for that clothing by means of her own labor. (To counsel.) Will that satisfy you?"

Counsel—"You might as well go ahead now and say whatever you please. I don't see that you can make it any worse, and we'll get you on record."

By the Court—"Well, gentlemen, I thought the fact that the Guiher mortgage was not satisfied did not justify counsel in saying that the jury should infer, or had a right to infer any fraudulent act from that fact. It amounts to nothing. It is the most common thing in the world for people not to satisfy mortgages. So common indeed, that the fact gives us a good deal of trouble in our county, years and years afterwards."

Verdict for defendants and judgment thereon. Plaintiffs then took this writ, assigning for error the answers to the points, the portions of the charge in brackets, and the remarks of the court at the conclusion of the charge.

*William A. Manderson* (*C. C. Brock, J. P. Teagarden* and *Iams & Barb* with him), for plaintiffs in error.

There must be a desertion or a neglect or refusal on the part of the husband—something that involves the wilful non-performance of a duty on his part. A mere failure to support on the part of the husband has never been held sufficient to entitle the wife to the benefits of this Act: King *v.* Thompson, 6 Norris, 369.

The Act of 1855 provides, "That whenever any husband from drunkenness, profligacy or other cause, shall neglect or refuse to provide for his wife, or shall desert her, she shall have all the privileges secured to a *feme sole* trader, under the Act of the twenty-second of February, one thousand seven hundred and eighteen." The Act does not use the word *failed*,

[Ellison *v.* Anderson.]

Out

as stated by the trial judge broadly and without qualification in a part of his charge.

Under the construction put upon the Act of 1855 by the court below, any failure upon the part of the husband to provide for the wife, that renders her aid or assistance necessary, however slight that aid or assistance, to her support, makes him, to use the language of the Act, " as if he were previously dead." Such a construction ignores the whole doctrine of the laws of this commonwealth, that a wife shall be a help-meet to her husband, and makes her, as far as he and his creditors are concerned, a mere toy, an ornament and useless thing.

The remarks of the learned judge at the close of the charge were made in the presence of the jury, and the result would have been the same had he given them a binding instruction for defendant: Linn *v.* Com'th, 15 Norris, 285 ; Stokes *v.* Miller, 10 W. N. C., 241.

*J. A. J. Buchanan* (*Wyly* and *Walton* with him), for defendants in erorr.—The failure of argument of plaintiff in error consists chiefly in not distinguishing between a husband's ability to earn, and his neglect or refusal to apply his earnings to the support of his family. Daniel M. Anderson was the cutter in the shop during these years that Mrs. Anderson paid for the property. What would it avail if he earned two or three dollars a day and spent it all at night for whiskey ?

The portions of the charge assigned as error are mere extracts ; the whole charge left the case fairly to the jury, and hence error cannot be assigned, because the judge gave his opinion on facts which he afterwards left to the jury : Long *v.* Ramsay, 1 S. & R., 72.

The questions involved in this case are : Did the drunkenness, proven by many witnesses against Daniel M. Anderson, and the incapacity it produced to provide for his family, proven by as many witnesses, and the arrangement made between the husband and wife, that she should have her earnings, bring her within the provisions of the Act of May 4th, 1885?

The leading case on this branch of the case is Black *v.* Tricker, 9 P. F. S., 13, followed by King *v.* Thompson, 6 Norris, 365 ; Elsey *v.* McDaniel, 14 Norris, 472 ; Orrell *v.* Van Gorder *et al.*, 15 Norris, 180. And did the wife pay for the property by her labor? If so, were the questions of fact fairly left to the jury ? These are questions that must be decided by this court on the inspection of the record.

Mr. Justice CLARK delivered the opinion of the court November 9th, 1885.

The title to the premises described in this writ of ejectment,

it is admitted, was in Samuel Montgomery, who by articles of agreement, in the month of May, 1879, sold and agreed to convey the same to Jane Anderson, wife of Daniel M. Anderson, for a consideration of $500. It is conceded, also, that the purchase was made wholly upon personal credit, and that Jane Anderson was, at the time, possessed of no separate estate, upon the credit of which, as against her husband and his creditors, the purchase could be supported. The purchase money was all afterwards paid, however, and on the 26th January, 1882, Montgomery executed the deed in accordance with the agreement.

The plaintiffs claim to have title to the property under and by virtue of a sheriff's conveyance of the right of Daniel M. Anderson, the husband, under a sale upon a judgment, obtained for a debt contracted in 1874.

The defendant, Jane Anderson, claims title to herself under the deed from Samuel Montgomery. She alleges that her husband, Daniel M. Anderson, in the year 1878 and in subsequent years, from habitual drunkenness, neglected or refused to provide for her and her children, twelve in number, and that by reason thereof by the provisions of the second section of the Act of 4th May, 1855, she became and was entitled to all the rights and privileges of a *feme sole* trader, under the Act of 22d February, 1718; that from her separate earnings as a seamstress or vest maker, she was obliged to maintain and support herself and her children ; that from a portion of the said earnings she purchased and paid for the property in dispute, in quarter yearly instalments of $37.50 each, and that the lot of ground, thus acquired by her, thereby became her own absolute estate, which in the language of the law, is "subject to her free and absolute disposal," without any liability to be interfered with or obtained by her husband.

If the facts are as thus alleged, on the part of the defendants, it is clear, that, even in the absence of a decree to that effect, the marital disabilities of the wife were to this extent removed; she might trade on her own account independently of her husband, might avail herself of her own earnings, might sue and be sued in her own name, and might acquire and exercise dominion over property in her own right, and that the marital rights of her husband were to the same extent suspended. It follows, also, that if the wife's acquisitions, under the conditions of the Act just referred to, are her own, free from the interference of her husband, they are also free from the claims of his creditors.

Those portions of the charge assigned for error in the first four assignments are excerpts or extracts, which, taken out of their proper connection, do not fairly present the views of the

court upon the questions involved. It cannot be pretended upon a reading of the whole charge together, that the learned judge intended to say, or that the jury could have understood him to say, that the failure of the husband, from any cause whatsoever, to support his wife would bring her within the protection of the Act of 1855; the clear reference is to a failure from a wilful non-performance of his marital duties. That part of the charge contained in the first assignment of error, owing to the parenthetic clauses interjected, is perhaps open to the criticism that it is somewhat obscure, but it certainly contains nothing which, taken in connection with the remaining part of the charge, can be considered erroneous. The learned judge says:—" The Supreme Court has held, that in a case of this kind, whenever it is made to appear, to the satisfaction of a jury, that a husband, by reason of drunkenness, profligacy or other cause, has failed, neglected or refused to provide for his wife, that is, to give her a reasonable and competent living according to his supposed circumstances ; . . . . . or, if a man from whatever cause—because it may not necessarily be from drunkenness—if he stays away from home, preventing him from doing that which he ought to do to maintain his wife and family ; or, from any cause neglects his wife, that she is unable to live by reason of what he does for her, then the provisions of this Act come into effect," etc.

The meaning of all this is plain and obvious; the failure referred to is such only as results from drunkenness or profligacy, or when the husband is in circumstances to render support, from wilful absence, or from neglect. If the husband's circumstances, either from sickness or other inability, were such as to prevent him from supporting his wife, his failure of course could not affect his marital rights.

The second assignment is we think equally without merit. As to the measure of support, which the husband must provide for his wife, exception is taken to the charge in the third assignment. The learned judge instructed the jury, in substance, that to provide for a wife was to give her a reasonable and competent livelihood, according to the husband's circumstances, what was necessary to contribute to her reasonable health and comfort, adding, that it should be enough "to keep her soul and body together at least, and to keep her from freezing." Of this, we think, the plaintiffs certainly cannot have the conscience to complain.

They do complain, however, that the court in this connection said to the jury that if a wife, through the neglect of her husband, without her own assistance, was unable to procure enough to eat, for herself and family, or sufficient clothing to wear, she would come within the conditions of the statute. A

husband is bound so far as he is able to support and maintain his wife, to furnish her such necessaries and comforts of life as her condition requires. Her duties are more properly of a domestic nature; she is not bound, if her husband is able to provide, to engage in business pursuits on her own account, to support herself and family; if she did, the husband being by law entitled to her earnings, the burden of her maintenance must still rest upon him. If therefore the husband, from drunkenness, profligacy, or other cause, neglect or refuse, when able, to provide a support for his wife, the wife is not bound to undertake the burden, or even to assist in the maintenance of herself and family, except upon the terms designated in the Act. If she is to labor on her own account, for her own living, she has a right to her own earnings to that end. For of what avail could her assistance be, if the husband can pocket her earnings, and squander them in a drunken and profligate life? It must of course be conceded that it is the duty of a wife to aid her husband in every reasonable and appropriate way, in the conduct of his affairs, but when from drunkenness, profligacy, or other cause, he refuses or neglects to maintain and support her, or deserts her, that duty is suspended; she is thereby, to this extent at least, relieved of her marital duties and disabilities, and may devote her energy and effort, on her own account, for the support of herself and her children. This and no more is the manifest meaning of the charge of the learned court below, on this branch of the case.

The questions raised by the third and fourth assignments ignore the effect of the Act of 1855, and are not sustained.

In the fifth and sixth points submitted by the plaintiffs, the court was requested, substantially, to charge the jury, that the evidence was not such as to entitle Jane Anderson to the benefit of the Act of 1855; that she had no claim to the status of a *feme sole* trader at the time of the purchase of the property in dispute, and that under all the evidence the verdict should be for the plaintiff. Upon a careful examination of the testimony, we are of opinion that the learned court was right in refusing this instruction. In the testimony of Elizabeth Anderson, Ella Engle, Hulda Redman, Emma Huggins, C. E. Bower, David Harman, Dan'l Anderson, Jr., Jane Anderson and others, there is abundant evidence from which the jury might find that from 1876 to 1879 and for some years thereafter, Dan'l M. Anderson was a very dissipated man; that several times during each week he went into a drunken debauch, was often carried home by his sons and his neighbors, to be cared for by his wife; that from habitual drunkenness he neglected his business, and also his wife and family, and failed to provide them with the necessaries of life; that his wife was com-

pelled to rely upon her own labor for support, that she engaged in the business of vest making on her own account, worked early and late, oftentimes until twelve o'clock at night, and by her own earnings, to a great degree, supported herself and her family. The veracity of the witnesses, and the weight and conflict of the evidence were for the jury, but that the testimony referred to was sufficient to justify a submission of the question cannot be doubted.

The court was, we think, fully justified in saying in answer to the fifth point, " There is evidence here for your serious consideration, that you ought to scan carefully and closely, evidence offered on the part of the defendant, which, if you believe it, would not only justify you, but make it your duty, to find a verdict for the defendants ; and thinking so, we have no right to take the case from you, but submit it under all the evidence, simply saying, that the burden of proof is on the defendant to establish to your satisfaction that she is entitled to the benefits of the Act of 1855, in order to justify you in finding for her."

The somewhat spirited colloquy between the plaintiff's counsel and the court, at the close of the charge, under the circumstances in which it occurred, is not such as to call for reversal.

We find no error in this record ; the several assignments of error are not sustained.

Judgment is affirmed.