# Estate of Bridget White, deceased.    Appeal of Thomas White.

*Husband and wife—Decedents' estates—Desertion—Refusal of husband to support wife—Act of May 4, 1855.*

Under the Act of May 4, 1855, Purdon's Digest, 1303, pl. 48, where a husband left his wife surreptitiously, refused her request to return to him, sent no money to pay her expense in traveling to him, made no preparation to receive her in his new place of abode, and for twenty-one years prior to her death neglected to contribute to her support, he is not entitled to participate in the distribution of her estate.

Argued Nov. 4, 1898.    Appeal, No. 121, Oct. T., 1898, by Thomas White, from decree of O. C. Allegheny Co., May T., 1897, No. 31, dismissing exceptions to adjudication.    Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Exceptions to adjudication.

The facts appear by the opinion of Over, J., which was as follows :

Bridget White died testate on March 16, A. D. 1896, leaving to survive her no children, but a husband, Thomas White. She made no provision for him in her will, and he elects to take such share in her personalty and realty as she could have taken as against his will, had she survived him.  By decree of the court of common pleas, No. 2, of this county, made on September 9, 1880, the decedent became entitled to the benefits of the act of April 3, 1872, securing to married women their separate earnings, and it is contended that this decree is a bar to the husband's claim.  The title to the act shows that its sole purpose is to secure to married women their separate earnings, and in construing it in Bovard v. Kettering, 101 Pa. 183, Justice Paxson said : " The act of 1848 had secured to married women their separate estates, but their earnings still belonged to their husbands." · To remedy this supposed defect in the law the act of 1872 provided that " the separate earnings of any married women of the state of Pennsylvania, whether said earnings shall be as wages for labor, salary, property, business or otherwise, shall accrue to and inure to the separate benefit and use of said married women, and be under the control of such married woman independently of her husband, and so as not to be subject to any legal claim of such husband, or to the claims of any creditor or creditors of such husband, the same as if such married women were a feme sole."  It will thus be seen that this act confers but a single right upon a married woman, viz : the right to retain her earnings from whatever source derived as against her husband and his creditors.  Any married woman in the state, with or without cause, may avail herself of the benefit of the act of 1872.  So that a married woman, living with her husband and supported by him, is entitled to its benefits ; and it surely was not intended that the act should deprive such a husband of his statutory interest in his deceased wife's estate.  It is true the act provides that the separate earnings of the wife shall not be subject to any legal claim of the husband ; but this provision was necessary to secure to her, her separate earnings, and has no reference to his rights as surviving husband.

It is alleged, however, that White wilfully and maliciously deserted his wife, and that his claim is therefore barred by the fifth section of the Act of May 4, 1855, Purdon's Digest, 1303, pl. 48, which is as follows: " No husband who shall have as aforesaid for one year or upwards previous to the death of his wife, wilfully neglected or refused to provide for his wife, or shall have for that period or upwards wilfully and maliciously deserted her, shall have the right to claim any right or title in her real or personal estate after her decease, as tenant by the curtesy, or under the intestate laws of this commonwealth." They were married in 1867, he then being a widower with children, lived together in this city until 1875, when he left her surreptitiously, went to California, and remained there until after her death, a period of twenty-one years. The presumption arising from these facts, that he, in the first instance, wilfully and maliciously deserted her, is rebutted by testimony showing that he left because of financial difficulties; that he wrote her soon after he arrived there, sent her some money, and that it was contemplated at one time that she should join him there. The letters he received from her indicate that the separation was expected only to be temporary. In the petition filed by the decedent September 9, 1880, claiming the benefit of the act of 1872, there is no allegation of desertion, merely of absence, and that her husband had not sent her sufficient money to support herself. Had the desertion at that time been wilful and malicious, or had he neglected or refused to provide for her within the meaning of the second section of the Act of May 4, 1855, Purdon's Digest, 903, pl. 5, she would have been entitled under it to all the privileges of a feme sole trader, even without a decree: Black v. Tricker, 59 Pa. 13; and the husband's claim have been defeated. The fact that she did not proceed under that act strongly corroborates the claimant's evidence, and with it shows that he had not then wilfully and maliciously deserted her, or neglected or refused to support her. The serious question is whether subsequently to 1880 his neglect of marital duties has been such as to forfeit his interest in the decedent's estate. He did not contribute anything to her support since that time, and had no correspondence with her. His excuse is that she wrote him not to send her any money and neglected to answer his letters. It is also contended that as he

requested her to join him in California, she was bound to do so. In Nelson on Divorce, sections 68 and 69, it is said that " The husband has a right to fix the domicile in any part of the world, and it is the duty of the wife to follow him; but the power is not arbitrary, he must show his good faith by some reasonable preparation to receive her." Here there is no evidence of any preparation being made by the husband. It is true that he requested her to join him, and that at one time she had the question under consideration; but there is no evidence that she ever promised to do so, nor that he furnished her sufficient money for the journey. In nearly all the letters he received from her she requested him to return home, and in the last one offered in evidence, dated September 23, 1878, she said, " I want you to let me know when you are coming home." Her neglect to answer his letters is not surprising in view of his failure to return home after so many requests. It is very doubtful if he could have maintained her in California, and as she was making her living and saving some money here it would not have been judicious for her to join him there. Moreover, she had no assurance that he might not leave her surreptitiously there as he had here. Neither his affection nor sense of duty prompted him to return to his wife for a period of twenty-one years; but after her death his desire to secure a part of her estate prompted him to return to her late home. It is evident from her declarations made when her will was executed that she considered his absence after 1880, as a wilful and malicious desertion, and under all the facts of the case it seems to have been·such within the meaning of the act. He is not therefore entitled to participate in the distribution of her estate.

*Error assigned* was the decree of the court.

*J. Boyd Duff*, for appellant.—In order to bar the rights of the husband given to him by the act of assembly, it is necessary for those claiming against him to show affirmatively that the husband for one year and upward, previous to the death of his wife, wilfully neglected or refused to provide for his wife, or, for that period or upwards, wilfully and maliciously deserted her. Clearly the desertion, if such there was, can only be established by implication, and the facts so far as they are found by

the finding of the auditing judge, and also by the testimony in the case, all disclose that it was not a desertion of the wife by the husband, but that if any one were the deserter, it was the wife, she having refused to come out to him: Ingersoll v. Ingersoll, 49 Pa. 249; Hahn v. Bealor, 132 Pa. 247; Hart v. McGrew, 11 Atl. Rep. 617; 1 Nelson on Divorce and Separation, sec. 68; Hair v. Hair, 10 Rich. Eq. 163.

*J. M. Shields*, for appellee, was not heard but cited in his printed brief: Ingersoll v. Ingersoll, 49 Pa. 249; McClurg's App., 66 Pa. 366; Bealor v. Hahn, 117 Pa. 173.

PER CURIAM, November 14, 1898:

The Act of May 4, 1855, Purd. Dig. 1303, pl. 48, provides that either a wilful neglect or refusal of a husband to support his wife for one year previous to her death or a wilful and malicious desertion of her for the same period, will debar him from any claim to any of her estate, real or personal. The neglect and refusal in this case had continued for very many years, and there was not the least evidence of any intent to support her during the later years of her life. It was also a genuine case of desertion persisted in for many years. On both grounds the appellant is clearly excluded from any participation in his deceased wife's estate. The reasons for this conclusion are so well and forcibly expressed in the opinion of the learned court below that it is quite unnecessary to enlarge upon them.

Decree affirmed, and appeal dismissed at the cost of the appellant.