Thornton et al., Appellants, *v.* Pierce, Appellant.

12

Argued October 8, 1937.  Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*H. H. Negley,* of *Negley, Negley & Patterson,* for appellants (No. 111).

*Van A. Barrickman,* for appellant (No. 148).

*Frederick E. Milligan,* for appellees (No. 148).

OPINION BY MR. JUSTICE STERN, November 12, 1937:

In 1903 Sadie Russell married Charles Thornton, and lived with him until 1916, when, without legal cause, he deserted and ceased to support her.  In 1920 she bought, in her own name, premises 2518 Hallett Street, and in 1925, premises 19 (later known as 633) Conklin Street, both in Pittsburgh.  These purchases were made principally out of her accumulated savings.  In 1927, not having heard from her husband for eleven years, and assuming that he was dead, she entered into a marriage

with James Pierce. In 1928 a deed conveying title to the two properties was executed by her and Pierce, "her husband," to one Frederick E. Milligan as straw man, who immediately reconveyed the title to James Pierce and Sadie Thornton Pierce, "his wife," with a recital that "the purpose of this deed is to vest in the grantees named herein an estate by entireties." In 1928 they executed a bond and a mortgage on the Hallett Street property to Penn State Savings and Loan Association, and in 1930 a bond and a mortgage on the Conklin Street property to James J. Martin. Pierce, from time to time, advanced substantial sums of money for the payment of taxes, mortgage interest and installments of principal. In 1933 Thornton, after an absence of seventeen years, suddenly reappeared, and Mrs. Thornton went to live with him and procured a judicial annulment of her marriage to Pierce. She also filed the present bill in equity against Pierce, praying that the deeds to Milligan and from the latter to herself and Pierce as tenants by entireties be decreed null and void. Thornton intervened as party plaintiff, James J. Martin and Penn State Savings and Loan Association as parties defendant; Milligan also was added as a party defendant. The court, after a hearing at which these facts were established, entered a decree in favor of plaintiffs, but ordered that new bonds and mortgages should be executed by them to the respective mortgagees in substitution for those given by Mrs. Thornton and Pierce. From this decree two appeals were taken, one by defendant Pierce because of the nullification of the deeds, and the other by plaintiffs because of the direction to plaintiffs to execute new obligations in order to preserve the status of the mortgages.

The decree cannot be sustained. At the time of the conveyances in 1928 Charles Thornton was the legal husband of Mrs. Thornton, and therefore, ordinarily, a deed of the properties executed by her alone would have been ineffectual to transfer title. Section 2 of the Act

of May 4, 1855, P. L. 430, however, provides: "That whensoever any husband, from drunkenness, profligacy or other cause, shall neglect or refuse to provide for his wife, or shall desert her, . . . her property, real and personal, howsoever acquired, shall be subject to her free and absolute disposal . . . without any liability to be interfered with or obtained by such husband, . . ." As Thornton had neglected for so many years to provide for his wife and had deserted her, she undoubtedly was, as plaintiffs admit, invested by the act with the right to alien the properties without his joinder. It is true that section 4 provides, in order that "creditors, purchasers and others may, with certainty and safety, transact business with a married woman under the circumstances aforesaid, she may present her petition to the court of common pleas of the proper county, setting forth under affidavit, the facts which authorize her to act as aforesaid, and . . . such court may . . . make a decree and grant her a certificate, that she shall be authorized to act, have the power and transact business as hereinbefore provided; and such certificate shall be conclusive of her authority, . . ."; but the certificate thus obtainable does not *create* the status of a feme sole trader, nor is it a prerequisite to the wife's exercise of her rights under the act. It is merely a judicial *recognition of the existence* of such rights; these result from the fact of the husband's desertion or neglect to provide for her, and not from the granting of the certificate: *Black v. Tricker,* 59 Pa. 13; *Elsey v. McDaniel,* 95 Pa. 472.*

---

* To the same effect see *Cleaver v. Scheetz,* 70 Pa. 496, 499, 500; *Overseers of Williamsport v. Overseers of Eldred,* 84 Pa. 429, 433; *Conley v. Bentley,* 87 Pa. 40, 48; *Foreman v. Hosler,* 94 Pa. 418, 426; *Orrell v. Van Gorder,* 96 Pa. 180; *Ellison v. Anderson,* 110 Pa. 486, 493; *Peoples Savings Bank v. Denig,* 131 Pa. 241, 254; *White's Estate,* 188 Pa. 633, 635; *Harley v. Leonard,* 4 Pa. Super. Ct. 431, 435; *Simon's Estate,* 20 Pa. Super. Ct. 450, 468; *Flanagan's Estate,* 59 Pa. Super. Ct. 61, 64, 65.

The court below held that the Act of 1855 had no application to the present case because Mrs. Thornton did not purport or intend to avail herself of its benefits. That is wholly immaterial. It is not a question as to what she thought was the source of her power, but whether she *had* the power. She may have been under the impression that her right arose from the fact, as she believed, that Thornton was dead and Pierce was her husband. Such assumption was erroneous; she *did*, however, have the legal capacity to convey the title without Thornton's joinder, but for another reason, namely, because he had deserted and neglected to provide for her. In *Foreman v. Hosler*, 94 Pa. 418, a wife, having been deserted by her husband, but before obtaining a valid decree of divorce, executed a mortgage in conjunction with a man whose wife she believed herself to be. The court held that being entitled to the rights of a feme sole trader she had authority to mortgage her real estate without the joinder of the deserting husband, and it was of no consequence that she executed the mortgage as the wife of another who was not legally her husband instead of in pursuance of her rights as a feme sole trader. On this point the court said (p. 427): "The language of the act is such as to leave no doubt as to the power of a deserted wife to sell or encumber her real estate without her husband being a party to the deed or mortgage. Indeed it was not questioned by the learned judge that if Mrs. Richards, as a deserted wife and feme sole trader, had executed the mortgage it would have bound any interest she then had in the land; but, he based his conclusion on the fact that the mortgagee did not contract with her either as a feme sole trader or as the deserted wife of Richards. On the contrary, he dealt with her expressly as the wife of J. J. Cart, who united with her in executing the mortgage, and consequently the lien he acquired was 'on such estate, and only such estate as Mr. and Mrs. Cart, as such, could create.' It is not pretended that Cart had any interest in the land.

If either of the mortgagors had any title it was in Mrs. Richards, and it cannot for a moment be doubted that it was her title the mortgage was intended to convey. If she, being a deserted wife, had power to convey, her deed could not be nullified by the fact that she called herself Mrs. Cart, or the wife of J. J. Cart, when it is conceded she was not. Styling herself in that way could not destroy her identity nor divest her of any power or authority she had over her separate estate as the deserted wife of Richards. By whatever name she chose to call herself, she was still the same Mrs. Richards; nor could the fact that Cart, as her pretended husband, was a party to the mortgage affect its validity."

Plaintiffs contend that since the conveyance from Milligan sought to vest in the grantees an estate by entireties, and Pierce and Mrs. Thornton, not being lawfully married, could not take such an estate, the deed was invalid. It is true that tenacy by entireties is limited to the case of a husband and wife, and therefore Pierce and Mrs. Thornton could hold title only as joint tenants or tenants in common. But the fact that in this respect the deed was ineffective did not wholly invalidate it, nor prevent the grantees from receiving and holding title under such form of tenancy as was appropriate under the circumstances. In cases where conveyances have been made to persons described as husband and wife, because believed to be such by the grantors and by themselves, it being either expressly stated or impliedly intended that they were to take by entireties, but where it was discovered that they were not lawfully married and therefore could not hold under such a tenancy, they have been allowed to take the estate either as joint tenants or tenants in common: *McKee v. Bevins,* 138 Tenn. 249, 197 S. W. 563; *Morris v. McCarty,* 158 Mass. 11, 32 N. E. 938; *Perrin v. Harrington,* 130 N. Y. Supp. 944: *Butler v. Butler,* 157 N. Y. Supp. 188; *Bell v. Little,* 197 N. Y. Supp. 674, 677, 678 (aff. 237 N. Y. 519, 143 N. E. 726). "In this deed the intention that the

grantees are to take as husband and wife as tenants by the entirety does appear. But they could not take in that tenancy, because they were not and could not under existing conditions ever legally become husband and wife. Such a tenancy can exist only between a lawful husband and wife, and cannot exist between two people under any other circumstances. . . . Their statement as to their relation being false and the tenancy expressed being necessarily based upon this false statement, or assumption of fact, the expression of that intention should be disregarded and the tenancy created by the conveyance determined as though it had been omitted therefrom": *Perrin v. Harrington,* supra (p. 946).

It follows from what has been said that the deeds from plaintiffs to Milligan and from the latter to Mrs. Thornton and Pierce were valid, and necessarily, therefore, the mortgages were also valid,—a conclusion which would seem to accord with the justice of this peculiar situation.

The decree of the court below is reversed and the bill dismissed; costs to be paid by plaintiffs.