## Briggs v. Hunter et vir

A. A. *Goodman* and A. S. *Oliensis*, for complainant.
J. P. *Byrne*, for respondents.

GORDON, JR., P. J., October 1, 1947.—This is a bill in equity for partition of real estate and for an accounting, and the case is before us upon bill, answer and proofs. The bill alleges that plaintiff and defendant, Mary Hunter, although not married to each other, lived together as husband and wife for many years, holding themselves out to the world as such; that on June 5, 1944, they took title to premises 5606 Walnut Street in the City of Philadelphia, in the name of "Robert Briggs, Jr. and Mary Hunter Briggs, his wife, as tenants by entireties"; that they jointly occupied a portion of the house, and rented out the remaining rooms to tenants; that defendant collected the rents, paid the carrying charges, and applied the profits toward their joint maintenance; that on or about April 12, 1946, for the purpose of reconveying the premises to themselves as joint tenants with right of survivorship, plaintiff signed a deed in blank, which defendant, Mary Hunter, retained, but that later in 1946 said defendant, in violation of her agreement to so fill in the blanks in the deed as to accomplish their aforesaid agreed purpose, filled in the deed to her son by her lawful husband, William J. Hunter, recorded the deed, and took possession of the premises to the exclusion of plaintiff. The bill concludes by asking for an accounting and partition.

The answer admits that the parties lived together as husband and wife as averred in the bill and took title to the premises in question as tenants by the entireties. It alleges, however, that the entire consideration was paid by defendant, Mary Hunter; denies any agreement to apply the profits from the renting out of rooms to others equally; denies that the purpose of the execution of the aforesaid deed in blank was to

reconvey the premises to themselves jointly, and avers to the contrary that it was to enable defendant, Mary Hunter, to convey the premises as she pleased; admits that she conveyed the premises to her son, William J. Hunter, by inserting his name as grantee in said deed and recording it; and concludes by denying the right of plaintiff to an accounting or to partition.

From the evidence presented we make the following findings of fact:

### Findings of fact

1. On June 5, 1944, and for many years prior thereto, plaintiff and defendant, Mary Hunter, although not married to each other, but each separately married to others, lived together and held themselves out to the world as husband and wife at 5606 Walnut Street, Philadelphia; and on said June 5, 1944, said plaintiff and defendant took title to said premises under the names of "Robert Briggs, Jr. and Mary Hunter Briggs, his wife, as tenants by the entireties". The consideration which plaintiff and defendant paid for said premises was in the form of a mortgage for $4,000, to the payment of which both parties became obligated, and a balance of $1,500, which was paid in cash. Of the latter sum $1,200 was produced by the plaintiff out of his own funds, and $300 by defendant, Mary Hunter, out of profits derived from the previous renting out of rooms in said premises.

2. After purchasing said property plaintiff and defendant continued to occupy a portion of the said property as their common domicile in the same manner as it would have been occupied by them had they been lawful husband and wife, and the remaining portions of said property were rented out to various tenants, the income from which was collected by defendant and, together with such monies as were contributed by plaintiff to the common maintenance and support of himself and defendant, was sufficient to pay the carrying charges of said property.

3. On or about April 12, 1945, at the solicitation of defendant, Mary Hunter, plaintiff executed a deed for the property in which the name of the grantee was left blank, and in that condition the deed was left in the possession of defendant.

4. In procuring plaintiff's signature to said deed in the manner aforesaid, defendant, Mary Hunter, reminded plaintiff that because of their irregular and unlawful relationship, they could not lawfully hold the said property as tenants by the entireties, and advised plaintiff that said defect in the deed could be corrected by their reconveying the property to themselves as joint tenants. On the faith of said representation and the promise of defendant to complete the deed by filling in their names as grantees therein as joint tenants, defendant secured the signature of plaintiff to said incomplete deed. Defendant did not at the time intend to so fill in said deed, and made said representation and promise for the purpose of overreaching the plaintiff and thereby defrauding him of his interest in said property.

5. A year later, in April 1946, defendant, Mary Hunter, without the knowledge or consent of plaintiff, and in violation of the express purpose and agreement under which defendant secured the signature of plaintiff to the said incomplete deed, inserted the name of William J. Hunter, her son by her lawful husband, as grantee therein, and the said deed was then signed by defendant under the name of Mary Hunter Briggs, and later recorded by her; but no actual delivery thereof to the grantee named therein was ever made by said defendant, who still retains it in her possession.

### Discussion

Under the foregoing facts we are called upon to direct disposition of a property the title to which became entangled by the efforts of the parties themselves to lend a deceptive appearance of respectability to a

meretricious relationship maintained in defiance of morality and common decency.

After living together in that relationship for upward of 14 years, plaintiff, a married man, and defendant, a married woman, purchased the property here in question in 1944 for their common use and occupancy. Although not married to each other, they represented themselves to the conveyancer who handled the transaction as husband and wife, and upon his advice took title in the name of "Robert Briggs, Jr. and Mary Hunter Briggs, his wife, as tenants by the entireties". The deed, of course, did not have the legal effect of creating an entirety, since an estate by entireties cannot exist between parties who are not lawfully married to each other. It was not otherwise invalid, however, and the legal effect of the deed was to vest title in the parties in one or the other forms of co-tenancy, namely either as joint tenants or tenants in common. The effect of a similar conveyance was determined in Thornton et al. v. Pierce, 328 Pa. 11, in which the Supreme Court stated at page 16:

"In cases where conveyances have been made to persons described as husband and wife, because believed to be such by the grantors and by themselves, it being either expressly stated or impliedly intended that they were to take by entireties, but where it was discovered that they were not lawfully married and therefore could not hold under such a tenancy, they have been allowed to take the estate either as joint tenants or tenants in common". See also Maxwell et al. v. Saylor, etc., 59 D. & C. 304.

This being so, it is not necessary to a decision of this case to determine whether the tenancy here created was joint or in common, since, as will be shown hereafter, both these forms of tenancy are subject to partition on the demand of any one of the common owners.

In April 1945, while the parties were still living together, plaintiff executed a form of deed which was

partially blank, the name of the grantee being entirely omitted. The parties give different explanations in their testimony as to the circumstances under which plaintiff signed the deed and his purpose in doing so. Plaintiff testified that he signed it at defendant's solicitation and in order to correct the conveyance to them "by the entireties", by reconveying the property to themselves as joint tenants with a right of survivorship; that it was understood between them that defendant would use the deed for that purpose, and that he never intended to join defendant in conveying the property to her, to her son or to any other third person. Defendant, on the other hand, testified that, because the money used in purchasing it had been furnished exclusively by herself, their intention and understanding was to convey the plaintiff's interest in the property to her so that she would become the sole owner of it.

After carefully weighing the testimony, the court is of opinion that, as stated in our findings of fact, plaintiff contributed the larger part of the purchase money, and that the $300 supplied by defendant represented monies received and accumulated by her from the renting of rooms to boarders. A year later, in April 1946, after the parties had separated, and without the knowledge or consent of plaintiff, defendant inserted as grantee in the deed the name of her son, William J. Hunter, who neither gave any consideration therefor, nor knew his mother had made him such grantee. Defendant then executed the deed on her part, caused it to be recorded, and thereafter retained it in her possession without making any actual delivery of it to her son.

Much of the testimony was directed toward the details surrounding the execution of this deed in an effort to prove the conflicting contentions as to the intent of the parties. We have considered the evidence upon this question with care, and have no doubt that plaintiff's version of the transaction is the correct one. Not only was he a more impressive and manifestly

truthful witness, but also his version of the circumstances of, and the motives and the purposes which prompted, his signing of the deed is more inherently probable than that of defendant. After having bought, largely with his own money, a home for the common use of himself and defendant, and taken title in a form of tenure designed to create a survivorship, it is more likely that, while they were still living together, he was willing to sign the deed in blank in order to correct the ineffective form of the title without disturbing the essential situation, than that he intended to strip himself of all interest in the property, and to make a gift of it to defendant's son or even to defendant herself. In addition, defendant's false testimony as to the sources of the monies that went into the purchase of the property largely destroys her credibility upon the subject of the transaction as a whole, including the reasons prompting the execution of the deed by plaintiff. By tricking plaintiff into signing the deed by false and specious promises she was enabled to secretly consummate her plans to fraudulently acquire his interest in the property over a year later, when the parties had finally quarreled and separated. Upon this issue the testimony is clear that plaintiff's signature to the deed in question was procured by defendant, Mary Hunter, by false representations and promises respecting the necessity for, and use she would make of, it; that the insertion of her son's name as grantee in the deed was a deliberate violation of the purpose for which the possession of the deed was entrusted to her, and constituted a fraudulent overreaching of him. Hence, as to him, the deed is void and ineffective, and plaintiff is entitled to have it so adjudicated. Defendant's son, William J. Hunter, has no superior equity to defeat plaintiff's right to avoid the deed, since it was never delivered to him, and, having paid nothing for the property, he is not in the position of a bona fide purchaser for value.

Apart from the question just discussed, and considering the deed itself divorced from the intention of the parties, we think it is equally ineffective and void as to defendant, Mary Hunter, because she was legally incapable of conveying a good title without the joinder of her lawful husband. Sections 1 and 2 of the Married Women's Property Act of June 8, 1893, P. L. 344, as amended by the Act of May 17, 1945, P. L. 625, provide that a married woman may not execute or acknowledge a deed, or other written instrument, "conveying her real property, unless her husband join in such conveyance". So far as conveyances of real estate by married women are concerned, section 2 of the Act of 1945 is a reënactment of the Act of 1893, which has been strictly construed to make absolutely void any attempt by a married woman to convey her interest in real estate without the joinder of her husband: Wicker v. Durr, 225 Pa. 305; Elder v. Elder, 256 Pa. 139; Dice v. Reese, 342 Pa. 379. It is true that the amendment of 1945 to section 1 of the Act of 1893 would seem, if read alone, to permit a married woman to "sell" her real estate "in the same manner and to the same extent as a married man", since the principal change made in section 1 by the amendatory act consisted in removing the express provision in the original act forbidding a married woman to sell her real property without her husband's joinder. This plain conflict between sections 1 and 2 of the Married Woman's Property Act as they now stand amended renders it practically impossible to determine by any process of reasonable reconciliation whether the legislature intended to place a husband and wife on a complete equality in respect to their rights to convey their separate real estate, or to continue her disability to do so without her husband's joinder. Section 1 is a general clause, however, while section 2 is clearly a special provision as to conveyances of real estate. In such circumstances sections 63 and 64 of the Statutory Construction Act of May 28, 1937,

P. L. 109, require us to give effect to the plain language of the second section as amended. Section 63 provides that "if the conflict between the two provisions [a general and special provision of the same or another law] be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such general provision shall prevail"; and section 64 of the same act also provides that: "Except as provided in Section sixty-three, whenever, in the same law, several clauses are irreconcilable, the clause last in order of date or position shall prevail". Both of these sections of the Statutory Construction Act require our holding that section 2 of the Act of 1945 prevails over the general provisions of section 1; that the deed here in question is void as to the signature of defendant, Mary Hunter, and hence is void as to both grantors.

The deed being a nullity in its entirety, the title to the property is therefore held by Robert Briggs, Jr., and Mary Hunter, not as tenants by the entireties, but either as joint tenants or tenants in common. Both the latter tenancies are subject to partition on the demand of any party in interest: Act of 1807, 4 Sm. L. 398, sec. 1, 12 PS §1694. It is evident that partition is the only solution to the legal tangle in which the parties have involved themselves. As the title now stands the property is subject to the contingent dower and curtesy interests of the lawful wife and husband of plaintiff and defendant, and a conveyance of a clear title cannot be made by them without the joinder of their respective spouses. It is well settled, however, that such contingent dower and curtesy rights can be defeated by a partition: Nelan v. Nelan, 30 Pa. C. C. 71; Imperatori et al. v. DeCarre, 50 D. & C. 250; Wetherill v. Mecke, Bright, N. P. 135. Having assumed jurisdiction in the matter, it is proper for us to exercise complete jurisdiction and grant final relief of

partition at the same time that we adjudicate the invalidity of the deed to William J. Hunter: Hayes' Appeal, 123 Pa. 110.

The only question remaining is whether or not we should order an accounting by defendant, Mary Hunter, of the monies received by her from the renting of rooms to boarders. During the time the parties jointly occupied the property, both were apparently satisfied with the disposition of such monies, so that any attempt to account for that period would be superfluous. As to the period during which Mary Hunter and her son have occupied the property to the exclusion of plaintiff, there would appear to be a right to an accounting as to his half interest. However, the character of the property is such that the difficulty of an accounting would, we think, outweigh the net result available for distribution under such an account. The property was used by Mary Hunter partly for her own use and partly as a rooming house. The latter use required considerable service which she rendered, and it is doubtful if the net profits more than met the carrying charges of the property, particularly in view of the large mortgage. For these reasons we think it is entirely proper to refuse any further accounting beyond the payment by her of the carrying charges of the property for that period. We will, therefore, direct a partition of the property, with a distribution of the proceeds over and above the encumbrances between plaintiff and defendant, Mary Hunter, equally.

For these reasons we reach the following conclusions of law.

## Conclusions of law

1. The attempted conveyance of premises 5606 Walnut Street, Philadelphia, by deed dated April 12, 1945, and November 12, 1945, and recorded November 15, 1946, in Deed Book C.J.P. 1517, page 408, etc., is void and vests no title in defendant, William J. Hunter, grantee named therein.

2. The title to premises 5606 Walnut Street, Philadelphia, as now held by Robert Briggs, Jr., and Mary Hunter, is not as tenants by entireties, but is either as joint tenants or as tenants in common in equal parts or shares.

3. The title of Robert Briggs, Jr., and Mary Hunter to the premises 5606 Walnut Street, Philadelphia, is subject to the right of partition and partition thereof should be decreed.

4. No further accounting is necessary between the parties other than for defendant Mary Hunter to show that she has maintained the taxes and mortgage charges on the property for the period in which she and her son, defendant, William J. Hunter, have occupied the said premises to the exclusion of plaintiff.

Accordingly, we make the following decree nisi in the case:

### Decree

And now, to wit, October 1, 1947, this cause having come to be heard upon bill, answer and proofs, it is ordered, adjudged and decreed:

1. The deed in which Robert Briggs, Jr., and Mary Hunter Briggs, his wife, are named as grantor and defendant, William J. Hunter, is named as grantee, dated April 12, 1945, and recorded November 15, 1946, in the office of the Recorder of Deeds in and for the County of Philadelphia in Deed Book C.J.P. 1517, page 408, etc., conveying premises described as follows:

"All that certain lot or piece of ground with the buildings and improvements thereon erected, situated on the South Side of Walnut Street at the distance of Fifty-four feet ten inches Westward from the West side of Fifty-sixth Street in the Forty-sixth Ward of the City of Philadelphia; containing in front or breadth on the said Walnut Street nineteen feet and five inches and extending of that width in length and depth Southward between parallel lines at right angles to the said Walnut Street seventy-seven feet and nine and

one-half inches to a certain three feet wide alley which extends Eastward and Westward from the said Fifty-sixth Street, to Ithan Street."
is hereby decreed to be null and void, and to vest no title thereto in the said William J. Hunter; and the Recorder of Deeds for Philadelphia County is hereby directed to make such proper notations on his records as may be necessary to correct them accordingly and indicate our holding and decision herein.

2. That a partition be made of the real estate, hereditaments and premises 5606 Walnut Street, County of Philadelphia, State of Pennsylvania, as more fully described in the bill, between plaintiff Robert H. Briggs, Jr., and defendant, Mary Hunter; and the case be referred to Elizabeth C. Lownsbury, Esq., as master in partition to value the said real estate and divide and make partition thereof into shares and purparts according to the shares and interests of the respective parties thereto, which the court finds to be one half to Robert Briggs, Jr., and one half to Mary Hunter, if the same can be divided without prejudice to the interest of the said parties respectively or without prejudice to or spoiling the whole of the said estate; and if the master shall find that such partition and division can be made either of the whole of the real estate or any part thereof then upon such valuation and partition to award and allot the said purparts to and between the parties; and if the master shall find that the said real estate cannot be divided without prejudice to or spoiling the whole, then to value the same; and if the parties shall refuse to take the same at the valuation, then to apply to the court for leave to make sale thereof at public auction, giving the like notice as is required in sales under proceedings in partition at common law.

3. Each party shall bear his own cost in this proceeding.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys; and unless exceptions thereto are filed within 10 days, either party may present a form of final decree to be entered in the case.